Taft, J.
 

 So far as a controversy between Indian Hill and Cincinnati is concerned, the following facts
 
 *564
 
 were admitted by Cincinnati’s demurrer:
 

 1. Since July 1, 1941, a certain taxpayer named Atkins has been a resident of and domiciled in Indian-Hill.
 

 2. In each year beginning with 1942, Atkins filed' personal property tax returns listing Ms intangible personal property for taxation purposes.
 

 3. On each of those tax returns Atkins asserted that his residence was Cincinnati when he knew that he-was a resident of and domiciled in Indian Hill.
 

 4. The Hamilton county auditor assessed the intangible personal property tax of Atkins and accepted the listing on Atkins’ tax returns of Cincinnati as the proper taxing district.
 

 5. The Hamilton county auditor and the Tax Commissioner have erroneously found and determined that the personal property taxes of Atkins originated in Cincinnati and the Hamilton county treasurer has distributed those taxes accordingly.
 

 6. As a result, Cincinnati has received a part of the intangible taxes collected from Atkins for the years since 1942, and has thereby become enriched at the expense of Indian Hill.
 

 Indian Hill seeks a judgment against Cincinnati for the part.of the intangible taxes collected from AtMns for the years 1942 and following and paid to Cincinnati.
 

 Indian Hill contends that, by reason of the provisions of Section 5639, General Code, it is entitled to any classified property taxes available for distribution and originating in Indian Hill.
 

 That section provides in part:
 

 * * the county treasurer shall distribute the undivided classified property tax fund in the county treasury as follows:
 

 4 4 To each municipal corporation in the county * * *
 
 *565
 
 such amount, out of the remainder of such undivided: taxes originating therein, after making the deductions-required by the first subparagraph of this section, as the budget commission shall have allowed as a receipt from this source * * *.
 

 “The residue of the undivided classified property tax fund * * * shall * * * be distributed among all the-school districts in the county *
 
 *
 
 *.”
 

 By Section 5625-24, General Code, the budget commission is given authority to fix the amount of the-proceeds of such taxes to be distributed to each municipal corporation. This section provides that, in determining such amount, the “commission shall be-•guided by the estimate of the county auditor * * # as-to the total amount of such # * * taxes to be collected, in the county during such *
 
 *
 
 * year; and as to the shares thereof distributable to municipal corporations and to the county, pursuant to Section 5639 of the General Code.” See
 
 County of Cuyahoga
 
 v.
 
 Budget Commission,
 
 152 Ohio St., 351, 354, 89 N. E. (2d), 456.
 

 On this appeal, it is not necessary to decide whether the foregoing contention of Indian Hill as to its rights under Section 5639, General Code, is entirely sound (See
 
 Board of Education of Cleveland City School Dist.
 
 v.
 
 City of Shaker Heights,
 
 137 Ohio St., 597, 32 N. E. (2d), 11, and last paragraph of Section 5639, General Code), since nothing in the foregoing statutory provisions is necessarily inconsistent with the allegations of the petition, to the effect that, due to a mistake of fact, Cincinnati did receive proceeds of intangible taxes which were collected from Atkins and which should have been distributed to Indian Hill.
 

 It was suggested in argument that no cause .of action was stated against Cincinnati because it was not alleged that the amounts received by Cincinnati from intangible taxes collected from Atkins had been re
 
 *566
 
 ceived in bad faith or with notice of any rights of Indian Hill thereto and because Cincinnati, in reasonable reliance on the receipt of such amounts, had changed its position. See Williston on Contracts, 4443, Section 1595, and Restatement of the Law of Restitution, 284, Section 69. However, this question is not before us for decision, since the necessary facts to establish any such' defense to the cause of action asserted against Cincinnati did not appear on the face of the amended petition.
 

 The only two legal questions to be considered and and determined by this court in deciding whether the demurrer of Cincinnati should have been sustained are:
 

 1. Whether one municipality can have restitution ■ from another municipality of money paid to the latter municipality, where such money should have been paid to the former municipality.
 

 2. Whether, assuming that it can, the General Assembly has provided against such recovery, so far as the proceeds of classified property taxes distributed to the latter municipality are concerned.
 

 Here, according to the allegations of the amended petition, the Hamilton county treasurer paid money, representing the proceeds of intangible taxes collected from Atkins, to Cincinnati because of the erroneous belief of the county auditor that the residence and domicile of Atkins was Cincinnati. As a matter of fact, according to the allegations of the amended petition, the residence and domicile of Atkins was Indian Hill. Under the statutes, therefore, the county auditor should have shown such money as originating in Indian Hill. According to the allegations of the petition, the county treasurer would then have paid that money to Indian Hill.
 

 The general rule of law is that, where a person pays money to another in the erroneous belief, induced by
 
 *567
 
 a mistake of fact, that he owes a duty to so pay it, whereas such duty is owed to a third person, the transferee, unless a bona fide purchaser, is under a duty of restitution to the third person. Restatement of the Law of Restitution, Section 126 (1).
 

 If that general rule of law is applied to the facts alleged in the amended petition, Indian Hill may have a right to restitution from Cincinnati for the proceeds of intangible taxes collected from Atkins and paid to Cincinnati.
 

 Cincinnati claims that the decision of this court in
 
 Board of Education of Lyme Township
 
 v.
 
 Board of Education,
 
 44 Ohio St., 278, 7 N. E., 12, requires a holding that such general rule of law is not applicable to the facts alleged in the amended petition. In that case, one board of education made a levy for school purposes. That levy was placed on the duplicate against all the lands within the district except those of a railroad company and a telegraph company. By mistake of the auditor, the lands of those two companies were omitted from the duplicate. During the same years, another board of education made a levy for like purposes. That levy was placed on the duplicate not only against the lands in the district of the latter board but also, by mistake, against the lands of the railroad and telegraph companies, which were not in its district but were in the district of the first board. This court held that the first board could not recover .from the second board the taxes collected from the levy by the second board on lands located in the district of the first board. As stated in the brief opinion “By the Court,” the taxes received by the second board “were not produced by any levy made by the” first board.
 

 If the taxes involved in the
 
 Lyme Township case
 
 were not produced by any levy made by the board seeking recovery on account thereof, it is difficult to see-
 
 *568
 
 what right that board would have to the proceeds of such taxes. In the instant case, the intangible taxes collected from Atkins and received by Cincinnati were levied against him by the General Assembly for the benefit of the municipality in which he had his residence and domicile, to wit, Indian Hill. Sections 5638 and 5639, General Code. In our opinion, therefore, the
 
 Lyme Township case
 
 is not authority for denying the right of Indian Hill to recover from Cincinnati the proceeds of intangible taxes collected from Atkins and paid to Cincinnati.
 

 Cincinnati refers also to
 
 Universal Church
 
 v.
 
 Trustees of Section 29, Columbiana Twp.,
 
 6 Ohio, 445. In that case, ministerial-section trustees were required by law to distribute rents or proceeds from certain land among the religious societies within the township on the basis of the number of members of each society residing within the township. The trustees met and divided the rents among four religious societies, overlooking one which it was claimed should have received a portion of the rents or proceeds. The society overlooked sought by mandamus to compel the trustees to pay it the share which it claimed it should have received, apparently seeking payment from funds of succeeding years. The demurrer of the trustees to the petition was sustained. The case of
 
 State, ex rel. Sharp,
 
 v.
 
 Trustees,
 
 2 Ohio, 108, was cited in support of the court’s ruling. An examination of the latter case discloses that the reasons for the similar ruling there made were that the fund, of which the overlooked society claimed a part, had been distributed to others who were not before the court; and that to make the distribution sought to the overlooked society would deprive those who were not before the court of the right to assert any defenses they might have to the claim for restitution. In the instant case, Cincin
 
 *569
 
 nati is before the court and may assert any defenses it may have to the claim of Indian Hill.
 

 Cincinnati has insisted further that, in referring to the right of restitution of a person entitled to money which has been paid by mistake to another person, the courts have stated that there is an implied contractual obligation to pay such money to the person to whom it belongs; and that prior decisions of this court, based upon statutes requiring certain mandatory formalities to be complied with in order to prevent municipal contracts from being void, prevent recovery in the instant case. The cases of
 
 City of Wellston
 
 v.
 
 Morgan,
 
 65 Ohio St., 219, 62 N. E., 127;
 
 McCloud
 
 v.
 
 City of Columbus,
 
 54 Ohio St., 439, 44 N. E., 95;
 
 City of Lancaster
 
 v.
 
 Miller,
 
 58 Ohio St., 558, 51 N. E., 52;
 
 Buchanan Bridge Co.
 
 v.
 
 Campbell et al., Commrs.,
 
 60 Ohio St., 406, 54 N. E., 372; and
 
 Comstock
 
 v.
 
 Village of Nelsonville,
 
 61 Ohio St., 288, 56 N. E., 15, are cited in support of the contention that there can be no implied municipal liability in contract. Reference may also be made to
 
 Ludwig, Hommel & Co.
 
 v.
 
 Village of Woodsfield,
 
 115 Ohio St., 675, 155 N. E., 386;
 
 Frisbie Co.
 
 v.
 
 City of East Cleveland,
 
 98 Ohio St., 266, 120 N. E., 309; and
 
 Ludwig, Hommel & Co.
 
 v.
 
 Village of Woodsfield,
 
 122 Ohio St., 148, 171 N. E., 23.
 

 Indian Hill endeavors to distinguish such cases on the ground that they involved attempts to recover on the theory of a contract implied in fact, whereas, in the instant case, recovery is sought on the theory of a contract implied in law. However, a reading of the opinions in some of those cases indicates that recovery was sought on the theory of a contract implied in law to prevent unjust enrichment. Apparently, while recognizing that generally, where a contract is unenforcible, relief upon an implied contract may be given,, this court did deny such relief where mandatory statu
 
 *570
 
 tory requirements as to fbrmalities of contracting had not been complied with by municipalities against which such relief was sought.
 

 The real reason why those cases are not applicable to bar a claim, such as that asserted here by Indian Hill against Cincinnati, is that it is not sought in the instant case to provide relief by way of quasi contract to one who was in a position to insist upon compliance with the laws relating to the mandatory formalities required of a municipal corporation in the making of contracts.
 

 As pointed out in the opinions in several of those cases relied upon by Cincinnati, if a party to a contract not complying with the mandatory formalities required by law for municipal contracts could recover on an implied contract, then the purposes of the General Assembly, in requiring such formalities, would be circumvented. Therefore, this court has regarded it as against public policy to permit a party, who had an opportunity to protect himself by insisting on compliance with those formalities, to recover on any theory for performance rendered under a void municipal contract.
 

 In the instant case, Indian Hill never had an opportunity to insist upon compliance with the formalities required by law for municipal contracts. The reasons, given in those cases for refusing recovery on the ground of unjust enrichment do not exist in the instant case.
 

 The remaining question is whether the General Assembly has provided against such recovery, so far as the proceeds of classified property taxes distributed to a municipality are concerned.
 

 On this question, we find the arguments of Cincinnati quite illusory.
 

 Cincinnati argues that the recognition of a remedy in the instant case would amount to an invasion of the
 
 *571
 
 field of taxation by the courts. Without passing upon the question as to whether the courts may invade the field of taxation, we believe it is accurate to state that the matter involved in this case does not involve the assessment of property for taxation or the levy or collection of taxes. Instead, it involves the distribution in accordance with the direction of the General Assembly (Section 5639, General Code) of the collected proceeds of taxes levied by the General Assembly (Section 5638, General Code). It may be observed that the object of the taxes so levied was for distribution in accordance with those directions. Section 5368, General Code.
 

 Cincinnati argues that, by Section 5372-1, General Code, it is the duty of the Tax Commissioner to determine in which taxing district property is assessible and, if necessary, to make findings of fact as to a taxpayer’s residence for tax purposes. It is then argued that, if the determination of the commissioner is erroneous, an appeal is provided for.
 

 Section 5372-1, General Code, is found in the chapter headed “Listing Personal Property.” That section does provide that the Tax Commissioner (formerly the Tax Commission — see Section 1464-3, General Code) “shall administer” the provisions of that chapter. A careful reading of that chapter discloses that the taxpayer is, as to the intangible personal property owned by him, required to make a sworn return on forms prescribed by the Tax Commissioner, which will enable listing and assessment of his intangible property in any municipal corporation in which the taxpayer resides. Sections 5368, 5371, .5372 and 5372-1, General Code. This chapter of the Code contains many provisions with regard to the assessment of such intangible property, obviously designed to make certain that all the intangible personal property of a person, whose personal property can be
 
 *572
 
 taxed in Ohio, will be listed and assessed for taxation. 'This chapter further contemplates controversies between the Tax Commissioner and the taxpayer with regard to the property to be listed and its assessment. However, there are no provisions which appear to ■contemplate any controversies as to the taxing district in which the property is to be assessed. See, for example, Sections 5368, 5370, 5371, 5372, 5372-1, 5372-3, ■5373, 5376, 5377, 5390, 5391, 5394 and 5395, General Code. The only duty of the Tax Commissioner, or the county auditor as his deputy, with respect to determining the taxing district in which property is assessible, is that found in Section 5376, General Code, which provides that each assessment certificate to be prepared by the Tax Commissioner or his deputy “shall ■exhibit the property assessible in each taxing district in the county as provided in this chapter.” It is not necessary to decide whether the Tax Commissioner has. any authority to determine that fact differently than as indicated in a taxpayer’s return. Certainly, a reading of this chapter of the Code indicates that the Tax Commissioner, in making out assessment certificates and specifying therein taxing districts in which personal property is assessible, may, as in the instant case, rely on the sworn statements of the taxpayer in his return.
 

 There are no parties directly interested in any determination as to the taxing district- with respect to intangible taxes, other than the taxing district specified on the taxpayer’s return and the taxing district in which the taxpayer resides or is domiciled. No provision is made in this chapter of the Code for participation of any such taxing district in either the listing or assessment of intangible taxes.
 

 Cincinnati argues that, by the provisions of Section 5372-3, General Code (See, also, Section 5376), intangible tax returns and other related documents are not
 
 *573
 
 ~to “be open to public inspection,” and that they are the only means of ascertaining the taxing district specified by a taxpayer. However, such taxing district could probably be ascertained from examination of the auditor’s tax list and duplicate prepared pursuant to Section 2587-1, General Code. It may be noted that such list and duplicate may be inspected “pursuant to the order of a court.” In any event, it does not follow that, because the General Assembly has made it difficult for a municipality to determine the facts which must be established in order to sustain a claim of the kind asserted in the petition in the instant case, the General Assembly intended to prohibit or provide against the assertion of such a claim.
 

 If the General Assembly intended to provide that a taxing district could not question whether or not the Tax Commissioner or auditor had determined the proper taxing district, it could have readily so provided. Whether it is desirable to permit controversies between taxing districts, such as involved in the instant case, is clearly a matter of public policy for determination by the General Assembly. In the absence •of any such legislative determination, it is not within the province of this court to supply it.
 

 Cincinnati argues further that the General Assembly ■could have provided for distribution of the proceeds ■of intangible taxes to the general revenue fund of the state instead of to local taxing districts; and that, therefore, the General Assembly has the right to provide for a method of distribution not subject to judicial review. There are two answers to this argument. First, the General Assembly has provided, by legislative enactment, that such revenues are to be distributed to local taxing districts. Second, the General Assembly has not exercised any such right to provide for •a method of distribution not subject to judicial review.'
 

 Cincinnati argues further that, within the meaning
 
 *574
 
 of the distribution sections of the Code, taxes originate in the taxing district in which the taxpayer resides rather than that in which he is domiciled. Without deciding whether this contention is sound, it is sufficient to state that the petition in the instant case alleges both residence and domicile of Atldns in Indian Hill.
 

 One of the grounds stated in the demurrer of Cincinnati was that “there is a misjoinder of parties defendant. ’ ’ Since no argument has been made by either party with regard to that ground, this court expresses no opinion with regard thereto.
 

 We can foresee that Indian Hill will encounter many difficulties in proving the facts necessary to establish its cause of action and in avoiding equitable and other defenses to that cause of action, which will undoubtedly be raised. However, in our opinion, the petition does state a cause of action against Cincinnati.
 

 It follows that the judgment of the Court of Appeals must be reversed and the cause remanded to the Common Pleas Court for further proceedings in accordance with law..
 

 Judgment reversed.
 

 Matthias, Hart, Zimmerman, Stewart and Turner, JJ., concur.