THE STATE OF OHIO, APPELLANT, *v.* WEST, A.K.A. WEAVER, APPELLEE.

[Cite as *State v. West* (1993), 66 Ohio St.3d 508.]

(No. 92–719—Submitted March 17, 1993—Decided June 23, 1993.)

510

*Joseph T. Deters,* Hamilton County Prosecuting Attorney, and *Christian J. Schaefer,* Assistant Prosecuting Attorney, for appellant.

*Hal R. Arenstein* and *Timothy A. Smith,* for appellee.

DOUGLAS, J. A review of the history of this case unearths a procedural morass. As we delve into the ultimate conclusions reached by the trial court and court of appeals, and consider the arguments posed by the parties, we uncover an almost endless array of issues. Thus, we raise, without deciding, the following questions: (1) Is the granting of shock probation an appealable order and, if so, should the state have filed a notice of appeal from the trial court's February 28, 1991 entry? (2) Is the *denial* (revocation) of shock probation an appealable order? (3) Did appellee have a right to file a notice of appeal from the trial court's April 16, 1991 entry denying (revoking) shock probation? (4) Did the court of appeals have jurisdiction to hear appellee's May 15, 1991 appeal? (5) Did the trial court have jurisdiction (authority) to reconsider its February 28, 1991 entry? (6) Does it matter if the February 28, 1991 order is void or merely voidable? (7) How do the sections on probation (R.C. Chapter 2951) and shock probation (R.C. 2947.061) relate or interrelate? (8) Was the original conviction for aggravated robbery under the facts of this case a proper conviction?

These and a number of other questions arise and we now find ourselves in much the same position as the court of appeals on appeal and the trial court on reconsideration found themselves. Because these questions have not been directly raised, briefed or argued before us, we decline to answer the questions even though answering them might very well lead us to a different conclusion. In deciding as we do we, specifically, are *not* approving the procedures followed at the trial and appellate court levels.

Accordingly, and solely using our equitable powers, we affirm the judgment of the court of appeals and reinstate the trial court's order of February 28, 1991, granting shock probation to appellee.

*Judgment affirmed.*

A.W. SWEENEY, RESNICK and F.E. SWEENEY, JJ., concur.

MOYER, C.J. and WRIGHT, J., concur in judgment only.

PFEIFER, J., dissents.

MOYER, C.J., concurring in judgment only. As stated by the majority, this appeal *does* present a number of justiciable legal issues for the court to decide. However, the majority bypasses these legal issues and decides the case on "equity." Ohio judges derive their authority to grant probation from statutory law alone. Courts, particularly appellate courts, have no constitutional or "equitable" power to free people convicted of crimes. Because the majority bases its judgment on what it calls its "equitable powers," rather than on the law, I cannot join its opinion.

## I

In the nineteenth century there was some debate over whether American trial courts had power deriving from the common law to indefinitely suspend criminal sentences. See Carter, Glaser & Wilkins, Probation, Parole, and Community Corrections (3 Ed.1984) 5–6. In England, the practice of judicial suspension of punishment had been necessary, in part, because "under common law at that time, a convicted offender had no right to appeal the verdict and no right to a new trial." *Id.* at 4. English judges used their power simply to prevent the injustices which were caused by an inflexible system of criminal justice. *Id.*

In 1916, however, the United States Supreme Court held that our federal courts could not indefinitely suspend a criminal sentence without legislative authority. *Ex parte United States* (1916), 242 U.S. 27, 37 S.Ct. 72, 61 L.Ed. 129. The court reasoned that such a remedy "is inconsistent with the Constitution, since its exercise in the very nature of things amounts to a

refusal by the judicial power to perform a duty resting upon it and, as a consequence thereof, to an interference with both the legislative and executive authority as fixed by the Constitution." *Id.* at 51–52, 37 S.Ct. at 78, 61 L.Ed. at 145. This follows from our system of separated powers: the legislature makes the law, the courts interpret and apply the law, and the executive enforces the law. Under the Constitution, courts cannot interfere with the terms of punishment as set by the legislature or the executive's duty to enforce those terms without positive legal authority to do so.

In 1933 this court expressly followed the federal lead. In *Toledo Mun. Court v. State ex rel. Platter* (1933), 126 Ohio St. 103, 184 N.E. 1, paragraph three of the syllabus, we held that "[t]he trial courts of this state do not have the inherent power to suspend execution of a sentence in a criminal case and may order such suspension only as authorized by statute." See, also, *State v. Smith* (1989), 42 Ohio St.3d 60, 537 N.E.2d 198, paragraph one of the syllabus.

If the trial courts do not have inherent equitable power to grant probation, neither does this court. Quite simply, if this court uses "equitable powers" to affirm the granting of probation, our interference with legislative and executive authority is just as unconstitutional as if a trial court used such power to grant probation in the first place.

Moreover, the nature of "equity" jurisdiction argues against an appellate court using its power the way the majority does in this case. Decisions requiring equitable balancing should not be based solely on the cold appellate record. Trial judges are far more able than appellate courts to fairly balance equities. That, of course, is why we generally use an "abuse of discretion" standard in reviewing decisions on equitable claims and defenses in the trial courts. See, *e.g., Joseph J. Freed & Assoc., Inc. v. Cassinelli Apparel Corp.* (1986), 23 Ohio St.3d 94, 23 OBR 255, 491 N.E.2d 1109. While we are able to judge whether a trial court abused its discretion in making an equitable judgment, we are not in place to make those judgments ourselves.

We are simply *not* a court of equity; the constitutional role of this court—its raison d'etre—is to interpret and apply the law. Frankly, the notion that we should stand at the gates of the penitentiary deciding who deserves probation and who deserves prison time should make us all more than a little uneasy.

In my opinion it is essential that judges follow articulated standards when a person's liberty is a stake. Due process requires no less. It is only through the use of such standards that we can ensure every person equal treatment under the law. Every school child learns the maxim that our government is a government of laws, not of people. Today's decision ignores that simple principle.

## II

In its decision, the court of appeals considered and resolved three dispositive issues. The court first decided that, after acquitting West of the firearm specification, the trial court "could not then punish her as if the specification had been proven." This led the court to consider whether aggravated robbery, without the firearm specification, is a probationable offense. It concluded that it can be, because the toy gun was not a "firearm" for purposes of the probation statute.[3]

Finally, the court considered whether the trial court had "jurisdiction" to reconsider its order granting shock probation and to reverse itself. The court held that while trial courts do have jurisdiction to reconsider earlier judgments on the ground that they were void *ab initio*, the trial court in this case erred in reversing itself, because its earlier judgment was valid.

I would have dismissed this appeal as improvidently allowed. As that was not done, I agree in general with the appellate court's legal analysis and would affirm its judgment.

WRIGHT, J., concurs in the foregoing opinion.

---

3. R.C. 2951.02 provides in pertinent part:

"(F) An offender shall not be placed on probation, and shall not otherwise have his sentence of imprisonment suspended pursuant to division (D)(2) or (4) of section 2929.51 of the Revised Code when any of the following applies:

"* * *

"(3) The offense involved was not a violation of section 2923.12 of the Revised Code and was committed while the offender was armed with a firearm or dangerous ordnance, as defined in section 2923.11 of the Revised Code."

R.C. 2923.11(B)(1) provides:

"'Firearm' means any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant. 'Firearm' includes an unloaded firearm, and any firearm which is inoperable but which can readily be rendered operable."