BOARD OF EDUCATION OF THE NORTH OLMSTED CITY SCHOOL DISTRICT, APPELLANT, *v.* BOARD OF EDUCATION OF THE CLEVELAND MUNICIPAL SCHOOL DISTRICT, APPELLEE, ET AL.

[Cite as *N. Olmsted City School Dist. Bd. of Edn. v. Cleveland Mun. School Dist. Bd. of Edn.,* 108 Ohio St.3d 479, 2006-Ohio-1504.]

(No. 2005–0132—Submitted October 25, 2005—Decided April 12, 2006.)

_____

ALICE ROBIE RESNICK, J.

{¶ 1} In this appeal, a portion of a school district's personal property tax revenue was misdirected to another school district due to the mistake of a taxpayer. The issue presented is whether a school district that fails to receive all of its revenue under its tax levy can proceed pursuant to a theory of unjust enrichment to recover from a school district that was credited with money it should not have received. For the reasons that follow, we affirm the judgment of the court of appeals that unjust-enrichment recovery is unavailable.

### Facts

{¶ 2} On June 30, 2003, appellant, the Board of Education of the North Olmsted City School District ("the North Olmsted Board" or "the North Olmsted School District") filed a complaint in the Court of Common Pleas of Cuyahoga County against appellee, the Board of Education of the Cleveland Municipal School District ("the Cleveland Board" or "the Cleveland School District"). The North Olmsted Board sought to recover personal property tax money that it claimed was improperly credited to the Cleveland School District for tax years 1997 and 1998, alleging that the money should have instead gone to the North Olmsted School District.

{¶ 3} The key facts are not in dispute. The money in question was distributed to the Cleveland School District because Circuit City Stores, Inc. filed incorrect intercounty personal property tax returns for tax years 1997, 1998, 1999, and 2000, erroneously stating that a Circuit City store located in the North Olmsted Board's taxing district was located in the Cleveland Board's taxing district. As a result of the errors, the Cuyahoga County Auditor allocated personal property tax proceeds from the store to the Cleveland School District for the relevant tax years.

{¶ 4} When the mistakes came to light, Circuit City was able to amend its personal property returns for tax years 1999 and 2000, and the county auditor redistributed the proceeds from the property for those tax years from the Cleveland School District to the North Olmsted School District. However, the North Olmsted Board alleged in its complaint that "[p]ursuant to statute, Circuit City was unable to amend its annual inter-county personal property tax returns for tax years 1997 and 1998," and that, therefore, the county auditor could not redistribute the proceeds for those tax years.

{¶ 5} In its complaint, the North Olmsted Board sought recovery of $74,849 plus interest under a theory of unjust enrichment from the Cleveland Board for tax years 1997 and 1998. The Cleveland School District and the North Olmsted School District levied personal property taxes at different rates for those tax years. Therefore, the amount of recovery sought was not the amount of personal property taxes paid by Circuit City to the Cleveland School District for the tax years at issue, but the amount that Circuit City would have paid under the North

Olmsted School District's levy for those tax years if Circuit City had reported the correct location of its store.

{¶ 6} Both parties moved for summary judgment. The trial court granted summary judgment to the North Olmsted Board for the full amount of recovery sought, stating that "[t]his case is on all fours" with *Rocky River City School Dist. Bd. of Edn. v. Fairview Park City School Dist. Bd. of Edn.* (1989), 63 Ohio App.3d 385, 579 N.E.2d 217, a decision of the Eight District Court of Appeals that the trial court described as "controlling precedent."

{¶ 7} The Eighth District Court of Appeals reversed the trial court's ruling in favor of the North Olmsted Board on the issue of recovery, holding that the North Olmsted Board could not recover under principles of unjust enrichment in this situation. In so doing, the court of appeals distinguished *Rocky River*, determining that even though that case involved similar facts, the fundamental question of whether recovery was available under a theory of unjust enrichment was not raised or decided in *Rocky River*.

{¶ 8} The cause is now before this court pursuant to our acceptance of a discretionary appeal.

## Availability of Unjust–Enrichment Remedy

{¶ 9} The central issue in this appeal is whether recovery under an unjust-enrichment theory is available as a remedy. The North Olmsted Board argues that it is entitled to such a recovery because the equities of the situation favor its position. It further argues that its action can be characterized as quasi-contractual, so that the six-year statute of limitations for contracts not in writing should apply to its claim. See R.C. 2305.07.

{¶ 10} Were we writing on a clean slate, we might be inclined to agree. However, for the reasons detailed below, there are several substantial obstacles that lead us to reject the North Olmsted Board's position. We hold that unjust-enrichment recovery is unavailable in this situation.

{¶ 11} As a starting point, we observe that the unfortunate misdirection of the personal property tax proceeds at issue was precipitated solely by the mistakes of the taxpayer, Circuit City, in filing incorrect tax returns for the years in question. This situation came about through no fault of either party to this appeal.

### *Lyme Twp.* and *Indian Hill*

{¶ 12} This court first encountered a similar situation many years ago. In *Lyme Twp. Bd. of Edn. v. Lyme Twp. Special School Dist. No. 1 Bd. of Edn.* (1886), 44 Ohio St. 278, 7 N.E. 12, a special school district in Lyme Township in Huron County sought to recover taxes collected against property located within that special district after the county auditor had mistakenly recorded the

property as being within the township's regular school district, so that the regular school district received the taxes pursuant to its own levy. In a very short opinion, this court held that the special district could not maintain an action to recover the tax money because the taxes received by the other district "were not produced by any levy made by the board of the special district" and because there was no privity between the two boards. Id. at 13, 7 N.E. 12.

{¶ 13} This court decided another case with some similarities to the instant case in 1950. The parties dispute the impact of that decision on this appeal. In that case, *Indian Hill v. Atkins* (1950), 153 Ohio St. 562, 42 O.O. 35, 93 N.E.2d 22, a taxpayer who lived in the village of Indian Hill filed tax returns for intangible personal property indicating that his place of residence was Cincinnati. The Hamilton County Auditor accepted the taxpayer's assertion that Cincinnati was the proper taxing district. Consequently, Cincinnati received taxes paid by that taxpayer that Indian Hill should have received. When Indian Hill sought restitution from Cincinnati, the trial court sustained Cincinnati's demurrer and dismissed the cause, and the court of appeals affirmed.

{¶ 14} This court reversed the judgment of the court of appeals, holding at paragraph three of the syllabus: "Where the proceeds of [intangible] personal property taxes collected from a taxpayer who resided in and was domiciled in one municipality are distributed to another municipality because of a mistaken belief that such taxpayer was a resident of the latter municipality, a cause of action *may exist* in favor of the first municipality against the second municipality for recovery of the proceeds so distributed." (Emphasis sic.)

{¶ 15} *Indian Hill* differs from the instant case in at least one significant respect for our purposes. In *Indian Hill,* the taxes that were incorrectly distributed were collected pursuant to a statewide tax levy and were not collected pursuant to the specific locally imposed levy of either of the municipalities involved. On the other hand, in *Lyme Twp.,* as in the instant case, the taxes sought to be recovered were collected pursuant to a specific locally imposed levy of a taxing district of a school system.

## Relevant Appellate Decisions

{¶ 16} In addition to *Lyme Twp.* and *Indian Hill,* the parties' arguments center on three court of appeals decisions handed down within the past two decades that were all based on facts virtually identical to the case we consider. In each of those three cases, a school district sought to recover revenue that it should have received pursuant to its locally imposed levy that was misdirected to another school district due to the mistake of a taxpayer.

{¶ 17} In *Rocky River,* 63 Ohio App.3d 385, 579 N.E.2d 217, the Eighth District Court of Appeals, basing part of its analysis on *Indian Hill,* affirmed the trial

court's decision allowing recovery against the school district that had mistakenly received the tax money. However, even though the present case involves virtually identical facts and also originates in the Eighth District, the court of appeals in the present case held that *Rocky River* did not address the same legal question. Furthermore, the *Rocky River* court did not even cite *Lyme Twp.* in its opinion, much less distinguish that case, further potentially weakening the value of the analysis in *Rocky River* as it pertains to this case.

{¶ 18} The second relevant court of appeals decision is *Rolling Hills Local School Dist. Bd. of Edn. v. Cambridge City School Dist. Bd. of Edn.* (Dec. 9, 1992), Guernsey App. No. 92–CA–7, 1992 WL 397620. In that case, the Fifth District Court of Appeals held that restitution was unavailable as a remedy to the school board seeking recovery, stating with little discussion that the trial court had correctly relied on *Lyme Twp.* to deny recovery of the misdirected money and appending a copy of *Lyme Twp.* to its opinion.

{¶ 19} The third relevant court of appeals decision is *Zupancic v. Carter Lumber Co.,* Franklin App. No. 01AP–1248, 2002-Ohio-3246, 2002 WL 1377932. In that case, the Tenth District Court of Appeals extensively examined the issue of whether unjust-enrichment recovery was available to the school district that had never received personal property tax revenue that had been distributed to another school district due to a mistake of the taxpayer. In *Zupancic,* the Tenth District held that, as a matter of law, unjust-enrichment recovery was unavailable.

{¶ 20} The North Olmsted Board relies on *Indian Hill* and *Rocky River* to support its argument that unjust-enrichment recovery should be available. The Cleveland Board distinguishes those two cases and relies on *Lyme Twp., Rolling Hills,* and *Zupancic* to support the judgment of the court of appeals in this case. We find *Zupancic* to be particularly well reasoned, and we agree with the substance of that opinion.

### *Lyme Twp.* Is the Controlling Precedent

{¶ 21} The Tenth District in *Zupancic v. Carter Lumber* reached several essential conclusions leading to its ultimate holding that unjust-enrichment recovery was unavailable. We specifically examine and adopt the following central explanations and conclusions.

{¶ 22} Most important, we agree with the conclusion reached by the *Zupancic* court that *Lyme Twp.,* rather than *Indian Hill,* is the proper precedent to apply to this situation. After extensively reviewing those two decisions, the *Zupancic* court focused specifically on the portions of the *Indian Hill* opinion in which this court discussed *Lyme Twp.*

{¶ 23} After recounting the facts of *Lyme Twp.*, this court in *Indian Hill* observed that "the taxes received by the second board 'were not produced by any levy made by the' first board." *Indian Hill*, 153 Ohio St. at 567, 42 O.O. 35, 93 N.E.2d 22, quoting *Lyme Twp.*, 44 Ohio St. at 278, 7 N.E. 12. For our purposes, the pivotal statement made by this court in *Indian Hill* was that "[i]f the taxes involved in the *Lyme Township* case were not produced by any levy made by the board seeking recovery on account thereof, it is difficult to see what right that board would have to the proceeds of such taxes." *Indian Hill*, 158 Ohio St. at 567–568, 42 O.O. 35, 93 N.E.2d 22.

{¶ 24} The *Zupancic* court's conclusion on the effect of this and other statements in *Indian Hill* was that "it is clear that *Indian Hill* did not limit the holding in *Lyme*. Indeed, the taxes at issue in *Indian Hill* were completely different from the taxes involved in *Lyme*. The taxes in *Indian Hill* were intangible personal property taxes that had been levied by the General Assembly based on a standard tax rate. They were not taxes levied locally by an individual school district with individual tax rates, such as in *Lyme*. The matter in *Indian Hill* involved the distribution of such proceeds pursuant to the General Code at that time, which directed that such proceeds go to the municipality in which the taxpayer had residency. Of course, *Lyme* involved the actual levying of taxes by local school districts. Thus, the facts in *Indian Hill* are clearly distinguishable from the facts in *Lyme* and, accordingly, *Lyme* remains good law." *Zupancic*, 2002-Ohio-3246, 2002 WL 1377932, at ¶ 23.

{¶ 25} We agree with another conclusion reached in *Zupancic* and adopted by the court of appeals below in this case—that even though *Rocky River* involved facts on point with those of this case, that decision did not address the issue raised here. As the *Zupancic* court observed, "[t]he only issues the court of appeals addressed in *Rocky River* were whether or not Fairview Park had an equitable defense to the unjust enrichment claim and which statute of limitations applied to such a claim." *Zupancic*, 2002-Ohio-3246, 2002 WL 1377932, at ¶ 26, citing *Rocky River*, 63 Ohio App.3d at 387–388, 579 N.E.2d 217.

{¶ 26} As the *Zupancic* court further observed, "[t]he *Rocky River* court never mentioned the *Lyme* case and, therefore, did not address the distinguishing factors between *Lyme* and *Indian Hill* as we discussed previously. Further, the court in *Rocky River* erred in stating that the matter before it did not involve the assessment of property for taxation or the levying of taxes. * * *

{¶ 27} "Indeed, that is exactly what was involved in *Rocky River* and what is involved in the case at bar. *Rocky River* involved the assessment and levying of taxes, not the mere distribution of taxes, and *Lyme*, not *Indian Hill*, should have been applied." *Zupancic*, 2002-Ohio-3246, 2002 WL 1377932, at ¶ 28, 29.

{¶ 28} As support for its reasoning that this matter does involve the assessment and levying of taxes, the court in *Zupancic* discussed this court's decision in *State ex rel. Rolling Hills Local School Dist. Bd. of Edn. v. Brown* (1992), 63 Ohio St.3d 520, 521, 589 N.E.2d 1265, which was decided after *Rocky River*, and which clarified that assessing property for taxation "includes assigning parcels to taxing districts and recording them accordingly on the tax list." *State ex rel. Rolling Hills* at 521, 589 N.E.2d 1265. We agree that *State ex rel. Rolling Hills* further weakens the reasoning employed in *Rocky River*.

{¶ 29} Furthermore, we agree with the reasoning of the Fifth District in *Rolling Hills*, Guernsey App. No. 92–CA–7, 1992 WL 397620. Although that case grew out of the same circumstances that gave rise to this court's opinion in *State ex rel. Rolling Hills*, 63 Ohio St.3d 520, 589 N.E.2d 1265, different legal questions were involved in the two, with the case before this court involving an attempt to compel the county auditor to correct the mistaken tax list, and the case before the Fifth District involving the same issue as in *Zupancic* and in this case—an attempted recovery of the misdirected revenue based on a theory of unjust enrichment. As did the courts of appeals in both *Zupancic* and in this case, the Fifth District in *Rolling Hills* properly recognized that *Lyme Twp.* is the controlling precedent in these circumstances.

## Should *Lyme Twp.* Be Overruled?

{¶ 30} Having established that *Lyme Twp.* controls the result in this case, we next consider whether that decision should be overruled.

{¶ 31} The *Zupancic* court made the following perceptive observation about the possible unfairness of the result it reached: "We recognize that *Lyme* is over one hundred years old and is based on a very technical point—the fact that the complaining school district never actually levied the property at issue. Of course, the reason the school district never actually levied the property at issue was that such property had mistakenly been assessed to the wrong taxing district.

{¶ 32} "The result of such technical application seems harsh at first blush. * * * However, unless and until the Supreme Court determines otherwise, we are bound to follow *Lyme*." Id. at ¶ 33–34.

{¶ 33} The *Zupancic* court was fully aware of the equities of the situation before it, and *Lyme Twp.* was only one of the reasons the court felt compelled to find that no unjust-enrichment recovery was available. The *Zupancic* court explained: "[O]ur decision is partially based on the statutory scheme set forth by the General Assembly with regard to the way schools fund, levy and budget and the way taxes are assessed, levied and collected. Such scheme, along with the precedent of *Lyme*, lead[s] us to conclude that appellee cannot maintain an unjust enrichment claim to recover the taxes already levied by appellant. * * *

{¶ 34} "Ohio's statutory scheme for financing public education is complex. At various stages in the process, the General Assembly has provided a right of review of certain determinations or actions. However, there appears to be no statutory remedy provided to a school district for the exact situation arising in the case at bar. One could argue, then, that a common law remedy such as the one set forth here (unjust enrichment) should be available to remedy a perceived wrong. Unfortunately, the answer is not so simple, especially given the *Lyme* precedent.

{¶ 35} "The statutory scheme is such that allowing the remedy sought here would be counter to and would disrupt this complex process. Indeed, * * * the statutory scheme does provide avenues for the correction of mistakes and sets forth a process that should help prevent the kind of mistake that occurred here. Given such complex process, the General Assembly could have specifically addressed the issue involved here had it so desired. It did not, and this court would be remiss to fashion a remedy where the legislature could have but did not." *Zupancic*, 2002-Ohio-3246, 2002 WL 1377932, at ¶ 34–36.

{¶ 36} The court in *Zupancic*, at ¶ 37–46, then embarked on an extensive consideration of a number of statutes on the assessment, levying, and payment of personal property taxes, the distribution of personal property tax proceeds to school districts, and the budget process for school districts. Included in the court's consideration were statutes within R.C. Chapter 5711, Chapter 319, and Chapter 5705. We will not fully revisit that discussion here, other than to state that we view it as an accurate, if abbreviated, summary of a complex process. Although it can be problematical to consider particular statutes in isolation, we do take note of the following passage from *Zupancic* discussing R.C. 5711.25, a provision that appears to have significance in this case:

{¶ 37} "On or before the second Monday of August annually, the tax commissioner shall transmit to the county auditor(s) the preliminary assessment certificates of taxpayers having taxable property in more than one county. R.C. 5711.25. In essence, each preliminary assessment certificate becomes final on the second Monday of August of the second year after the certification of the preliminary assessment certificate. *Id.* Thus, it could be argued that under R.C. 5711.25, an assessment, which includes the assigning of property to taxing districts, cannot be challenged beyond the date specified." Id. at ¶ 38.

{¶ 38} At the end of its consideration of the many statutes potentially implicated, the court in *Zupancic* stated:

{¶ 39} "The above gives merely a base understanding of the process by which a school district budgets and levies and receives taxes, and by which taxes are assessed and distributed. It can be presumed from the system set forth above that a school district either knows or should know the sources of its revenue—

including sources that generate personal property taxes and the amounts thereof—and budgets accordingly. Again, the legislature has provided for the review of matters that may arise during this process, and some relate to the matter at hand. However, it does not appear that the statutory scheme provides a remedy for appellee at the stage in which appellee sought corrective action. However, the statutory scheme does seem to provide adequate controls under which the situation here could have been prevented or corrected in a timely manner." Id., 2002-Ohio-3246, 2002 WL 1377932, at ¶ 47.

{¶ 40} We agree with the conclusion of the *Zupancic* court that the processes put in place by the General Assembly provide certain procedures for the correction of errors and that, therefore, no extrastatutory remedies are appropriate. While mindful of the fact that in many situations, as was possibly true here, it can be difficult to discover mistakes in time for them to be fully corrected within the statutory scheme, we decline to recognize the availability of the unjust-enrichment remedy sought by the North Olmsted Board. Accordingly, we decline to overrule *Lyme Twp.* and so adhere to its application to the case before us.

{¶ 41} In this case, Circuit City was able to amend its returns for tax years 1999 and 2000 according to statutory procedures, and the county auditor was able to redistribute the tax revenues from those years to the North Olmsted District. However, the parties appear to agree that the statutory procedures did not allow redistribution for the tax years at issue (apparently due to R.C. 5711.25). We determine that, given the remedies contained within the statutory scheme, it is not appropriate to provide an additional remedy through an unjust-enrichment recovery.

{¶ 42} If the General Assembly wishes to provide additional remedies, that is its prerogative, but this is not a situation in which extrastatutory remedies are appropriate, and we decline to recognize further avenues for recovery. The current statutory procedures function as a limitation on the available remedies, so that R.C. 2305.07, the six-year statute of limitations for contracts not in writing, has no application to this situation.

## Conclusion

{¶ 43} The *Zupancic* court, 2002-Ohio-3246, 2002 WL 1377932, at ¶ 48, aptly summarized why unjust-enrichment recovery was unavailable to the school district that had failed to receive its revenue in that case: "Given the complex [statutory] process briefly described above, the review processes provided thereunder, the budgeting process and information provided during such, the constraints upon school districts in making appropriations once budgeting and levying [are] complete, and the *Lyme* precedent, we conclude that as a matter of law appellee may not recover, under a theory of unjust enrichment, the tax

proceeds derived from a levy by appellant on personal property, already assessed by the county auditor, collected by the county treasurer and distributed to appellant, even though the personal property was mistakenly assessed to the wrong taxing district."

{¶ 44} We find that reasoning just as compelling as did the *Zupancic* court. We affirm the judgment of the court of appeals.

Judgment affirmed.

MOYER, C.J., O'CONNOR and LANZINGER, JJ., concur.

PFEIFER, LUNDBERG STRATTON and O'DONNELL, JJ., dissent.

---

**PFEIFER, J., dissenting.**

{¶ 45} The majority opinion begins by stating that "a portion of a school district's personal property tax revenue was misdirected to another school district due to the mistake of a taxpayer" and concludes by stating that " 'even though the personal property was mistakenly assessed to the wrong taxing district,' " we're not going to do anything about it. Quoting *Zupancic v. Carter Lumber Co.*, Franklin App. No. 01AP–1248, 2002-Ohio-3246, 2002 WL 1377932, ¶ 48. Between the beginning and the conclusion is much fine legal writing. Unfortunately, all of that fine writing completely misses the point. Instead of conflating legalistic legerdemain with analysis, the majority should bow to the obvious: when a school district receives personal property tax revenue that should have gone to another district, it has been unjustly enriched and should give that revenue to the other district. The majority's long, winding path to a contrary, counterintuitive, and wrong conclusion is a glowing tribute to the insidiousness of precedent.

{¶ 46} I would reverse *Lyme Twp. Bd. of Edn. v. Lyme Twp. Special School Dist. No. 1 Bd. of Edn.* (1886), 44 Ohio St. 278, 7 N.E. 12, which the majority opinion, quoting *Zupancic* at ¶ 33, characterizes as " 'over one hundred years old and * * * based on a very technical point' "; I would ignore *Rolling Hills Local School Dist. Bd. of Edn. v. Cambridge City Dist. Bd. of Edn.* (Dec. 9, 1992), Guernsey App. No. 92–CA–7, 1992 WL 397620, and *Zupancic*, which are not binding on this court and which rely on *Lyme Twp.*; and I would reverse the judgment of the court of appeals.

{¶ 47} Every third-grade schoolboy in Cleveland knows that if he finds money and knows who lost it, he should return it to the person who lost it. That's what the Cleveland Municipal School District should do. Because Cleveland is not

going to do that, I believe that it should explain its immoral decisionmaking process to its students. I dissent.

---

LUNDBERG STRATTON, J., dissenting.

{¶ 48} It is undisputed that due to Circuit City's mistaken belief that it was located within the Cleveland Municipal School District, the North Olmsted schools were deprived of approximately $74,849 of tax revenue. Nevertheless, the majority holds that North Olmsted may not recover any of these tax proceeds. I respectfully disagree.

{¶ 49} North Olmsted filed a complaint seeking to recover the tax proceeds under a theory of unjust enrichment. The majority holds that North Olmsted cannot recover based primarily on two points.

{¶ 50} Relying upon *Lyme Twp. Bd. of Edn. v. Lyme Twp. Special School Dist. No. 1 Bd. of Edn.* (1886), 44 Ohio St. 278, 7 N.E. 12, the majority holds that North Olmsted cannot seek restitution because North Olmsted cannot prove unjust enrichment. Specifically, the majority holds that because the taxes in question were collected pursuant to a levy for the Cleveland schools, North Olmsted cannot prove that it conferred a benefit upon the Cleveland schools, an element of unjust enrichment. The majority also reasons that " 'the process by which a school district budgets and levies and receives taxes, and by which taxes are assessed and distributed' " " 'does seem to provide adequate controls under which the situation here could have been prevented or corrected in a timely manner.' " Quoting *Zupancic v. Carter Lumber Co.*, Franklin App. No. 01AP–1248, 2002-Ohio-3246, 2002 WL 1377932, ¶ 47. Thus, the majority determines that "it is not appropriate to provide an additional remedy through an unjust-enrichment recovery."

{¶ 51} I believe that principles of equity dictate that North Olmsted can recover the tax proceeds from the Cleveland Municipal School District. "To bring a cause within the jurisdiction of a court of equity, it is requisite that the primary right involved be an equitable right as distinguished from a legal right, or that the remedy at law as to the right involved is not full, adequate and complete." *State ex rel. Lien v. House* (1944), 144 Ohio St. 238, 244, 29 O.O. 399, 58 N.E.2d 675.

{¶ 52} "Restitution, on the basis of unjust enrichment, is a common-law remedy designed to prevent one from retaining property to which he is not justly entitled." *Keco Industries, Inc. v. Cincinnati & Suburban Bell Tel. Co.* (1957), 166 Ohio St. 254, 256, 2 O.O.2d 85, 141 N.E.2d 465. Restitution is also available

as an equitable remedy. *Santos v. Ohio Bur. of Workers' Comp.,* 101 Ohio St.3d 74, 2004-Ohio-28, 801 N.E.2d 441, ¶ 13. " '[F]or restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to *restore* to the plaintiff particular *funds* or property in the defendant's possession.' " (Emphasis added.) Id., quoting *Great–West Life & Annuity Ins. Co. v. Knudson* (2002), 534 U.S. 204, 214, 122 S.Ct. 708, 151 L.Ed.2d 635.

{¶ 53} "Personal property used in business shall be listed and assessed in the taxing district in which such business is carried on." R.C. 5711.07. Ohio's tax code has no provision that permits a local school district to levy and collect personal property tax on business property outside its district. Thus, the Cleveland Municipal School District had no authority to levy and collect the tax proceeds at issue here because the taxpayer's property was not located within the Cleveland district. Therefore, I would hold that the tax proceeds at issue are more properly characterized as belonging to North Olmsted schools, irrespective of the fact that it was collected under the Cleveland levy. In fact, I am at a loss to understand how the Cleveland district justifies its retention of the tax proceeds at issue, thereby forcing this needless litigation.

{¶ 54} To hold that the Cleveland schools were not unjustly enriched because the tax proceeds at issue were collected pursuant to the Cleveland school district's levy raises form over substance. "It is a familiar maxim of equity that equity regards substance, not form." *Stern v. Cuyahoga Cty. Bd. of Elections* (1968), 14 Ohio St.2d 175, 188, 43 O.O.2d 286, 237 N.E.2d 313 (Taft, C.J., dissenting). I would hold that North Olmsted's complaint merely seeks to restore tax proceeds to the entity to which they properly belong. Accordingly, I would hold that North Olmsted is seeking an equitable rather than a legal remedy.

{¶ 55} The majority also argues that the school-funding and budgeting process provides avenues for the correction of mistakes when tax proceeds are directed to the wrong district, as occurred herein. Yet the majority fails to identify any such remedy or remedies to return wrongfully diverted tax proceeds to the proper school district. Moreover, even *if* such remedies are available, it could be difficult to discover mistakes in time for them to be corrected in a timely manner, as the majority recognizes. The majority also recognizes that " 'it does not appear that the statutory scheme provides a remedy for appellee at the stage in which appellee sought corrective action.' " Quoting *Zupancic,* 2002-Ohio-3246, 2002 WL 1377932, ¶ 47. Accordingly, I believe that the statutory school-funding and budgeting scheme fails to provide an adequate or complete remedy for the North Olmsted schools to recover the tax proceeds at issue.

{¶ 56} This court has utilized its equitable powers when appropriate. See *State v. West* (1993), 66 Ohio St.3d 508, 512, 613 N.E.2d 622. "[A] court's equitable powers may be invoked to provide the flexibility necessary to moderate

unjust results." *Barone v. Barone,* Geauga App. No. 2004–G–2575, 2005-Ohio-4479, 2005 WL 2077319, ¶ 17. Pursuant to our equitable powers, and because North Olmsted has no adequate or complete remedy to secure the return of its tax proceeds though the school-funding or budgeting process, and because the remedy that North Olmsted seeks is equitable in nature, I would order the Cleveland Municipal School District to return the $74,849 in tax proceeds to the North Olmsted School District.

{¶ 57} Funding Ohio's schools is a difficult enough task without the additional problem of forcing a school district to relinquish tax proceeds mistakenly directed to another school district. Therefore, I would call on the General Assembly to fashion a clear and adequate remedy to address this situation.

{¶ 58} Therefore, I respectfully dissent.

O'DONNELL, J., concurs in the foregoing dissenting opinion.

_____

Sylvester Summers Jr. Co., L.P.A., and Sylvester Summers Jr., for appellant.

James H. Hewitt Co., L.P.A., and James H. Hewitt III, for appellee.