OPINION
{¶ 1} Plaintiff-appellant, DVCC, Inc., appeals from a judgment of the Court of Claims of Ohio dismissing plaintiff's first amended complaint. For the following reasons, we affirm in part and reverse in part the judgment of the trial court.
 {¶ 2} According to alleged facts, in December 1997, Beaumont Environmental Systems, a division of Beaumont Birch Company, Inc., which was a wholly owned subsidiary of DVCC, Inc., contracted with SFT, Inc. to provide engineering and design services for a commercial demonstration project at the Medical College of Ohio ("MCO").[1] This commercial demonstration project concerned a new clean coal technology for flue gas desulfurization, namely, rapid absorption process ("RAP").
 {¶ 3} Under the RAP agreement with SFT, Inc., Beaumont Environmental Systems agreed to waive $178,800 in project costs, and Beaumont Environmental Systems was entitled to demonstrate the RAP project after it became fully operational as a marketing tool to attract potential clients.
 {¶ 4} In January 1998, the Ohio Department of Development, Ohio Coal Development Office ("OCDO"), which, among other things, was charged to encourage increased market use of Ohio coal through technology and market development, entered into a grant agreement with MCO to provide some funding for the RAP project.
 {¶ 5} Approximately four months later, in April 1998, Beaumont Environmental Systems contracted with SFT, Inc. to provide engineering and design services for another commercial demonstration project at MCO, the LoTOxNOx project. The LoTOxNOx project concerned a new clean coal technology for NOx reduction. Under the LoTOxNOx agreement with SFT, Inc., Beaumont Environmental Systems waived $1,260,099 in project costs, and Beaumont Environmental Systems was entitled to demonstrate the LoTOxNOx project after it became fully operational as a marketing tool to attract potential clients. In June 1998, OCDO entered into another grant agreement with MCO, agreeing to provide some funding for the LoTOxNOx
project.
 {¶ 6} On December 31, 2002, DVCC, Inc. acquired certain assets of Beaumont Birch Company, Inc., which included all rights, title, and interest in the RAP and LoTOxNOx
agreements and in the accounts receivable from the RAP and LoTOxNOx projects. DVCC, Inc. later fully performed the remaining obligations of Beaumont Environmental Systems under the RAP and LoTOxNOx agreements.
 {¶ 7} In June 2004, DVCC, Inc. sued SFT, Inc., MCO, and OCDO in the Court of Claims of Ohio, asserting nine causes of action: breach of contract claims against SFT, Inc.; breach of contract claims against MCO and OCDO; claims of breach of good faith and fair dealing against MCO and OCDO; a lien claim against funds held by MCO; and unjust enrichment claims against MCO and SFT, Inc.
 {¶ 8} Because SFT, Inc. was not a state agency or instrumentality as required under R.C. 2743.02(E), the Court of Claims by pre-screening entry sua sponte dismissed SFT, Inc. as a party. Thereafter, MCO moved to dismiss plaintiff's complaint pursuant to Civ.R. 12(B)(1) and (6), claiming that the Court of Claims lacked jurisdiction over the lien claim; unjust enrichment claims were not available against the state; and plaintiff's contract claims were without merit. OCDO separately moved to dismiss plaintiff's complaint pursuant to Civ.R. 12(B)(6), claiming, among other things, that plaintiff was not entitled to recovery against OCDO's grant agreements with MCO and OCDO under an intended third-party beneficiary theory.
 {¶ 9} Plaintiff subsequently filed a first amended complaint for foreclosure of liens against public improvements and damages. Because plaintiff filed an amended complaint, the trial court denied as moot MCO and OCDO's motions to dismiss plaintiff's original complaint.
 {¶ 10} In its first amended complaint, plaintiff asserted six causes of action: (1) MCO and OCDO breached the RAP grant agreement between MCO and OCDO, and MCO and OCDO breached the RAP agreement between Beaumont Environmental Systems and SFT, Inc.; (2) MCO and OCDO breached covenants of good faith and fair dealing by withdrawing from the RAP project, by failing to submit or approve, or both, a report, and by failing to pay DVCC, Inc. for services rendered; (3) MCO and OCDO breached the LoTOxNOx grant agreement between MCO and OCDO, and MCO and OCDO breached the LoTOxNOx agreement between Beaumont Environmental Systems and SFT, Inc.; (4) MCO and OCDO breached covenants of good faith and fair dealing by withdrawing from the LoTOxNOx project, by failing to submit or approve, or both, a report, and by failing to pay DVCC, Inc. for services rendered; (5) DVCC, Inc. is entitled to funds held by MCO for the RAP and LoTOxNOx projects in satisfaction of a lien claim; and (6) MCO was unjustly enriched because MCO's retention of the benefits of Beaumont Environmental Systems' performance and DVCC, Inc.'s performance under the RAP and LoTOxNOx
agreements constituted unjust enrichment; MCO's retention of financial contributions by Beaumont Environmental Systems under the RAP, and LoTOxNOx agreements constituted unjust enrichment; and MCO's retention of funds from OCDO constituted unjust enrichment.
 {¶ 11} Pursuant to Civ.R. 12(B)(6), OCDO moved to dismiss plaintiff's first amended complaint. In its Civ.R. 12(B)(6) motion, OCDO claimed that: (1) OCDO was not a party to the contracts between Beaumont Environmental Systems and SFT, Inc., and, therefore, OCDO was not liable for any alleged breach under these contracts; (2) plaintiff was not entitled to recovery against the grant agreements between MCO and OCDO on an intended third-party beneficiary theory; and (3) assuming arguendo that DVCC, Inc. was an intended beneficiary under the grant agreements between OCDO and MCO, plaintiff's claims were time barred.
 {¶ 12} Pursuant to Civ.R. 12(B)(1) and (6), MCO moved to dismiss plaintiff's first amended complaint, claiming that: (1) the Court of Claims lacked jurisdiction over the lien claim; (2) unjust enrichment claims were not available against the state; and (3) plaintiff's contract claims were without merit.
 {¶ 13} Finding that plaintiff was not a party to the grant agreements and that plaintiff was not an intended third-party beneficiary of the grant agreements, the trial court granted OCDO's motion to dismiss and dismissed plaintiff's claims against OCDO. However, in its decision, the trial court did not expressly address plaintiff's contract claims against OCDO under the RAP and LoTOxNOx agreements.
 {¶ 14} Finding that the Court of Claims was an inappropriate forum to seek foreclosure of a mechanic's lien against a public improvement and that plaintiff was not a party to or an intended third-party beneficiary of the grant agreements, the trial court later granted MCO's motion to dismiss and dismissed plaintiff's claims against MCO. However, in its decision, the trial court failed to expressly address plaintiff's contract claims against MCO under the RAP and LoTOxNOx agreements, and the trial court failed to expressly address plaintiff's claim of unjust enrichment against MCO.
 {¶ 15} From the trial court's final judgment, plaintiff now appeals. After plaintiff filed its notice of appeal, OCDO moved to dismiss itself from the present appeal. By journal entry, this court previously dismissed OCDO's motion.
 {¶ 16} Plaintiff does not challenge in this appeal the trial court's dismissal of plaintiff's claim for foreclosure on the public improvement lien for lack of jurisdiction pursuant to Civ.R. 12(B)(1). Plaintiff does, however, assign the following errors for our consideration:
Assignment of Error No. 1 — The Trial Court Erred In Dismissing The Plaintiff's Unjust Enrichment Claims Against The Medical College of Ohio.
Assignment of Error No. 2 — The Trial Court Erred In Holding That Plaintiff Did Not State A Claim As A Third Party Beneficiary Under The Grant Agreements Between Defendants-Appellees, Medical College of Ohio and Ohio Coal Development Office.
 {¶ 17} Appellate review of an order granting a Civ.R. 12(B)(6) motion to dismiss is de novo. Perrysburg Twp. v.Rossford, 103 Ohio St.3d 79, 2004-Ohio-4362, at ¶ 5; Howard v.Supreme Court of Ohio, Franklin App. No. 04AP-1093,2005-Ohio-2130, at ¶ 6, citing Kramer v. InstallationsUnlimited, Inc. (2002), 147 Ohio App.3d 350.
 {¶ 18} "Under Ohio law, when a party files a motion to dismiss for failure to state a claim, all the factual allegations of the complaint must be taken as true and all reasonable inferences must be drawn in favor of the nonmoving party." Byrdv. Faber (1991), 57 Ohio St.3d 56, 60, citing Mitchell v.Lawson Milk Co. (1988), 40 Ohio St.3d 190, 192. "[F]or a judge to grant a motion to dismiss for failure to state a claim, it must appear "`beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."'" Byrd, at 60, quoting O'Brien v. Univ. CommunityTenants Union (1975), 42 Ohio St.2d 242, 245, citing Conley v.Gibson (1957), 335 U.S. 41, 45-46, 78 S.Ct. 99; see, also,Slife v. Kundtz Properties, Inc. (1974), 40 Ohio App.2d 179,185-186 (stating that "[r]ule 12(B)(6) motions should be granted only where the allegations in the complaint show the court to a certainty that the plaintiff can prove no set of facts upon which he might recover, or where the claim is predicated on some writing attached to the complaint pursuant to Civil Rule 10(D) and that writing presents an insuperable bar to relief");Howard, supra, at ¶ 7.
 {¶ 19} "[A] contract is binding only upon parties to a contract and those in privity with them." Samadder v. DMF ofOhio, Inc., 154 Ohio App.3d 770, 2003-Ohio-5340, at ¶ 25, citingAm. Rock Mechanics, Inc. v. Thermex Energy Corp. (1992),80 Ohio App.3d 53, 58. Here, as alleged in plaintiff's first amended complaint, neither MCO nor OCDO were parties to Beaumont Environmental Systems' contract with SFT, Inc. Accordingly, to the extent that plaintiff alleges breach-of-contract claims against MCO and OCDO concerning its predecessor-in-interest's agreements with SFT, Inc., we conclude that these breach-of-contract claims were properly dismissed by the trial court.
 {¶ 20} "When parties enter into contracts, they are bound to each other by `standards of good faith and fair-dealing.' "Laurent v. Flood Data Serv., Inc. (2001), 146 Ohio App.3d 392,399, quoting Bolling v. Clevepak Corp. (1984),20 Ohio App.3d 113, 121. Here, however, no contractual relationship existed among Beaumont Environmental Systems, MCO, and OCDO under plaintiff's agreements with SFT, Inc. Because no contractual relationship existed among plaintiff's predecessor-in-interest, MCO and OCDO under Beaumont Environmental Systems' agreements with SFT, Inc., neither MCO nor OCDO could breach covenants of good faith and fair dealing as to these contracts with SFT, Inc. See Laurent, at 399 (finding that absent a contractual relationship between appellants and appellees, appellees could not breach covenant of good faith and fair dealing); see, also,Lakota Loc. School Dist. Bd. of Edn. v. Brickner (1996),108 Ohio App.3d 637, 646 (finding that the covenant of good faith is part of a contract claim and it does not stand alone as a separate cause of action from a breach of contract claim).
 {¶ 21} Accordingly, to the extent that plaintiff alleges that MCO and OCDO breached covenants of good faith and fair dealing under Beaumont Environmental Systems' agreements with SFT, Inc., these claims were properly dismissed by the trial court.
 {¶ 22} Plaintiff's first assignment of error asserts the trial court erred by dismissing plaintiff's claims of unjust enrichment against MCO.
 {¶ 23} "A claim for unjust enrichment arises out of contract implied in law, or quasi-contract." Firstar Bank, N.A. v.Prestige Motors, Inc., Huron App. No. H-04-037, 2005-Ohio-4432, at ¶ 8, citing Hummel v. Hummel (1938), 133 Ohio St. 520,525-528. "Unjust enrichment occurs when a person `has and retains money or benefits which in justice and equity belong to another.'" Johnson v. Microsoft Corp., 106 Ohio St.3d 278,2005-Ohio-4985, at ¶ 20, quoting Hummel, at 528. Restitution, on the other hand, "is the `common-law remedy designed to prevent one from retaining property to which he is not justly enriched.'"Johnson, at ¶ 20, quoting Keco Industries, Inc. v. Cincinnati Suburban Bell Tel. Co. (1957), 166 Ohio St. 254, 256, appeal dismissed, certiorari denied, 355 U.S. 182, 78 S.Ct. 267. The purpose of a restitution claim "`is not to compensate the plaintiff for any loss or damage suffered by him but to compensate him for the benefit he has conferred on the defendant.'" Johnson, at ¶ 21, quoting Hughes v. Oberholtzer
(1954), 162 Ohio St. 330, 335.
 {¶ 24} In Johnson, the Supreme Court of Ohio instructed:
* * * To establish a claim for restitution * * * a party must demonstrate "(1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment ('unjust enrichment')."
Id. at ¶ 20, quoting Hambleton v. R.G. Barry Corp. (1984),12 Ohio St.3d 179, 183.
 {¶ 25} Relying upon Buchanan Bridge Co. v. Campbell (1899),60 Ohio St. 406, MCO asserts plaintiff's unjust enrichment claim against MCO lacks merit. In Buchanan Bridge, prior to ordering materials for a bridge, the board of county commissioners of Fulton County, Ohio, failed to comply with legislative requirements. Accordingly, the Buchanan Bridge court held:
A contract made by county commissioners for the purchase and erection of a bridge, in violation or disregard of the statutes on that subject, is void, and no recovery can be had against the county for the value of such bridge. Courts will leave the parties to such unlawful transaction where they have placed themselves, and will refuse to grant relief to either party.
Id. at syllabus.
 {¶ 26} The Supreme Court of Ohio in Buchanan Bridge also explained:
* * * Whatever the rule may be elsewhere, in this state the public policy, as indicated by our constitution, statutes, and decided cases, is that, to bind the state, a county, or city for supplies of any kind, the purchase must be substantially in conformity to the statute on that subject, and that contracts made in violation or disregard of such statutes, are void, — not merely voidable, — and that courts will not lend their aid to enforce such a contract, directly or indirectly, but will leave the parties where they have placed themselves. * * *
Id. at 419-420. Cf. Marsh v. Fulton Cty. (1870), 77 U.S. 676,684, 10 Wall. 676 (observing that "[t]he obligation to do justice rests upon all persons, natural and artificial, and if a county obtains the money or property of others without authority, the law, independent of any statute, will compel restitution or compensation. But this is a very different thing from enforcing an obligation attempted to be created in one way, when the statute declares that it shall only be created in another and different way").
 {¶ 27} Thus, under the holding of Buchanan Bridge, where a board of county commissioners fails to comply with mandatory statutory requirements as to the formalities of contracting, relief based upon an implied contract may not be given. See, also, State ex rel. Hunt v. Fronizer (1907), 77 Ohio St. 7, 18
(construing Buchanan Bridge) (stating that "[t]hat case simply holds that a contract for a bridge made in violation or disregard of the statutes on the subject is void, and no recovery can be had against the county for its value").
 {¶ 28} For the following reasons, however, we conclude thatBuchanan Bridge does not bar plaintiff's unjust enrichment claim against MCO.
 {¶ 29} In Village of Indian Hill v. Atkins (1950),153 Ohio St. 562, the Village of Indian Hill sued the city of Cincinnati and others, claiming that the city of Cincinnati was unjustly enriched at the expense of the Village of Indian Hill when the city of Cincinnati collected personal property taxes for intangible personal property from a certain taxpayer. Relying upon Buchanan Bridge and other cases, the city of Cincinnati contended that there could be no implied municipal liability in contract. Id. at 569.
 {¶ 30} Discussing Buchanan Bridge, the Supreme Court of Ohio in Village of Indian Hill, supra, distinguished BuchananBridge and other similar cases as follows:
* * * [A] reading of the opinion in some of those cases indicates that recovery was sought on the theory of a contract implied in law to prevent unjust enrichment. Apparently, while recognizing that generally, where a contract is unenforceable, relief upon an implied contract may be given, this court did deny such relief where mandatory statutory requirements as to formalities of contracting had not been complied with by municipalities against which such relief was sought.
The real reason why those cases are not applicable to bar a claim, such as that asserted here by Indian Hill against Cincinnati, is that it is not sought in the instant case to provide relief by way of quasi contract to one who was in a position to insist upon compliance with the laws relating to the mandatory formalities required of the municipal corporation in the making of contracts.
As pointed out in the opinions in several of those cased relied upon by Cincinnati, if a party to a contract not complying with the mandatory formalities required by law for municipal contracts could recover on an implied contract, then the purposes of the General Assembly, in requiring such formalities, would be circumvented. Therefore, this court has regarded it as against public policy to permit a party, who had an opportunity to protect himself by insisting on compliance with those formalities, to recover on any theory for performance rendered under a void municipal contract.
In the instant case, Indian Hill never had an opportunity to insist upon compliance with the formalities required by law for municipal contracts. The reasons, given in those cases for refusing recovery on the ground of unjust enrichment do not exist in the instant case.
Id. at 569-570.
 {¶ 31} Based upon the record before us, in the present case plaintiff did not have a contract with MCO and, thus, plaintiff, like the Village of Indian Hill in Village of Indian Hill,
never had an opportunity to insist upon compliance with formalities that may be required by law. Therefore, construingVillage of Indian Hill, we conclude that, under the facts and circumstances of this case, Buchanan Bridge does not preclude plaintiff's unjust enrichment claim against MCO.
 {¶ 32} In the present case, plaintiff alleges, among other things, that: MCO retained the benefit of Beaumont Environmental Systems' contributions made under the RAP and LoTOxNOx
agreements with SFT, Inc.; MCO retained the benefits of services rendered under Beaumont Environmental Systems' agreements with SFT, Inc.; and MCO received funds from OCDO concerning the RAP and LoTOxNOx projects and plaintiff is entitled to some of these funds.
 {¶ 33} "Defining a given situation as either just or unjust is subjective and not necessarily open to a clear and decisive answer; as one court explained, `[t]he notion of what is or is not "unjust" is an inherently malleable and unpredictable standard.'" Reisenfeld Co. v. Network Group, Inc. (C.A.6, 2002), 277 F.3d 856, 860, quoting DCB Constr. Co. v. Cent. CityDev. Co. (Colo. 1998), 965 P.2d 115, 120.
 {¶ 34} Comment c of Section 1 of Restatement of the Law, Restitution (1937) 13, Unjust Enrichment, provides:
Even where a person has received a benefit from another, he is liable to pay therefor only if the circumstances of its receipt or retention are such that, as between the two persons, it is unjust for him to retain it. The mere fact that a person benefits another is not of itself sufficient to require the other to make restitution therefor. Thus, one who improves his own land ordinarily benefits his neighbors to some extent, and one who makes a gift or voluntarily pays money which he knows he does not owe confers a benefit; in neither case is he entitled to restitution. * * *
 {¶ 35} Whether MCO was in fact unjustly enriched is not for our determination here. Rather, drawing all reasonable inferences in favor of plaintiff, we need only determine whether "`"beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."'" Byrd, supra, at 60, citing O'Brien, supra, at 245, citing Conley, supra, at 45-46.
 {¶ 36} Drawing all reasonable inferences in favor of plaintiff, we cannot conclude that beyond doubt plaintiff can prove no set of facts to support its claim that would entitle plaintiff to relief. Based on the allegations in plaintiff's first amended complaint, through its own services and those of its alleged predecessor-in-interest, plaintiff conferred a benefit upon MCO; MCO had knowledge of the benefit; and MCO retained the benefit without compensating plaintiff. Furthermore, plaintiff also alleges that such retention of benefits by MCO is unjust.
 {¶ 37} Accordingly, for the foregoing reasons, plaintiff's first assignment of error is sustained.
 {¶ 38} Plaintiff's second assignment of error asserts the trial court erred by holding that plaintiff failed to state a third-party beneficiary claim under grant agreements between MCO and OCDO.
 {¶ 39} "[A] contract is binding only upon parties to a contract and those in privity with them." Samadder, supra, at ¶ 25, citing Am. Rock Mechanics, Inc., supra, at 58. Here, plaintiff and plaintiff's alleged predecessor-in-interest were not signatories to the promises encompassed in the grant agreements between OCDO and MCO.
 {¶ 40} "[F]or a third person to enforce a promise made for his benefit, it must appear that the contract was made and entered into directly or primarily for the benefit of such third person." Am. Rock Mechanics, Inc., supra, at 58, citing RoyalIndemn. Co. v. N. Ohio Granite Stone Co. (1919),100 Ohio St. 373; see, also, Berge v. Columbus Community Cable Access
(1999), 136 Ohio App.3d 281, 303, appeal not allowed (2000),88 Ohio St.3d 1503, citing Chitlik v. Allstate Ins. Co. (1973),34 Ohio App.2d 193, 196 (stating that "[a] third-party beneficiary is one for whose benefit a promise is made, but who is not a party to the contract encompassing the promise").
 {¶ 41} Section 302 of the Restatement of the Law 2d, Contracts (1981) 439-440, which the Supreme Court of Ohio adopted in Hill v. Sonitrol of Southwestern Ohio, Inc. (1988),36 Ohio St.3d 36, 40, defines intended and incidental beneficiaries. As stated in Hill, Section 302 provides:
"(1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either
"(a) the performance of the promise will satisfy an obligation of the promise to pay money to the beneficiary; or
"(b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.
"(2) An incidental beneficiary is a beneficiary who is not an intended beneficiary."
Hill, at 40.
 {¶ 42} In Hill, the court also observed:
Comment e to Section 302 states:
"Performance of a contract will often benefit a third person. But unless the third person is an intended beneficiary as here defined, no duty to him is created. * * *"
Hill, at 40.
 {¶ 43} In its analysis, the Hill court applied the "intent to benefit" test as explained in Norfolk Western Co. v. UnitedStates (C.A.6, 1980), 641 F.2d 1201, 1208. The Hill court instructed:
"* * * Under this analysis, if the promisee * * * intends that a third party should benefit from the contract, then that third party is an `intended beneficiary' who has enforceable rights under the contract. If the promisee has no intent to benefit a third party, then any third-party beneficiary to the contract is merely an `incidental beneficiary,' who has no enforceable rights under the contract.
"* * * [T]he mere conferring of some benefit on the supposed beneficiary by the performance of a particular promise in a contract [is] insufficient; rather, the performance of that promise must also satisfy a duty owed by the promisee to the beneficiary."
Id. at 40, quoting Norfolk Western Co., supra, at 1208.
 {¶ 44} In TRINOVA Corp. v. Pilkington Bros., P.L.C. (1994),70 Ohio St.3d 271, order clarified by 71 Ohio St.3d 1202, the Supreme Court of Ohio further explained:
Under [third-party beneficiary] theory, only an intended beneficiary may exert rights to a contract of which he is not a party. The so-called "intent to benefit" test provides that there must be evidence, on the part of the promisee, that he intended to directly benefit a third party, and not simply that some incidental benefit was conferred on an unrelated third party by the promisee's actions under the contract. There must be evidence that the promisee assumed a duty to the third party.
Id. at 277-278.
 {¶ 45} To support its claim that it is an intended beneficiary under the grant agreements between MCO and OCDO, plaintiff relies upon paragraph 14 of the grant agreements. Paragraph 14 of both grant agreements expressly provides:
At Grantee's election, Grantee may subcontract portions of work or activities described herein. The parties hereto acknowledge that the Grantee shall subcontract a major portion of the work for this project to SFT, Inc. and Beaumont Environmental Systems. Grantee shall provide photocopies of any proposed subcontracts which pertain to this project prior to their execution for Grantor's review. All subcontracts of Grantee shall be bound by all terms of this Agreement, which shall carry forward to all subcontracts. However, in any event, the Grantee shall be solely responsible for performance of work and activities set forth herein.
 {¶ 46} Plaintiff asserts that the use of "shall" in "Grantee shall subcontract a major portion of the work for this project to SFT, Inc. and Beaumont Environmental Systems" shows the parties' intent to confer intended third-party beneficiary status upon Beaumont Environmental Systems, DVCC, Inc.'s alleged predecessor-in-interest.
 {¶ 47} MCO and OCDO argue that paragraph 11 of both grant agreements unambiguously shows that plaintiff was not an intended third-party beneficiary. Paragraph 11 expressly provides:
Neither this Agreement nor any rights, duties, or obligations described herein shall be assigned by the Grantee without the prior express written consent of the Grantor. Nothing expressed or implied in this Agreement is intended, or shall be construed, to confer upon or give any person, other than the parties hereto and their permitted assigns and successors, any rights or remedies under this Agreement.
 {¶ 48} Construction of written contracts is a matter of law that is reviewed de novo. Alexander v. Buckeye Pipe Line Co.
(1978), 53 Ohio St.2d 241, at paragraph one of the syllabus;Saunders v. Mortensen, 101 Ohio St.3d 86, 2004-Ohio-24, at ¶ 9. "Contracts are to be interpreted so as to carry out the intent of the parties, as that intent is evidenced by the contractual language." Skivolocki v. E. Ohio Gas Co. (1974),38 Ohio St.2d 244, paragraph one of the syllabus. "[A] contract is to be read as a whole and the intent of each part gathered from a consideration of the whole." Saunders, supra, at ¶ 16, citingFoster Wheeler Enviresponse, Inc. v. Franklin Cty. ConventionFacilities Auth. (1997), 78 Ohio St.3d 353, 361.
 {¶ 49} A reviewing court presumes that the intent of the parties to a contract is within the language used in the written instrument. Saunders, at ¶ 9, citing Kelly v. Med. Life Ins.Co. (1987), 31 Ohio St.3d 130, paragraph one of the syllabus. If a reviewing court is able to determine the parties' intent from the plain language of the agreement, then there is no need to interpret the contract. Saunders, at ¶ 9, citing Aultman Hosp.Assn. v. Community Mut. Ins. Co. (1989), 46 Ohio St.3d 51.
 {¶ 50} "Only when the language of the contract is unclear or ambiguous, or when the circumstances surrounding the agreement invest the language of the contract with a special meaning will extrinsic evidence be considered in an effort to give effect to the parties' intentions." Shifrin v. Forest City Enterprises,Inc. (1992), 64 Ohio St.3d 635, syllabus.
 {¶ 51} "When the terms in a contract are unambiguous, courts will not in effect create a new contract by finding an intent not expressed in the clear language employed by the parties." Id. at 638, citing Alexander, supra, at 246. "No clear standard has evolved to determine the level of lucidity necessary for a writing to be unambiguous." State v. Porterfield,106 Ohio St.3d 5, 2005-Ohio-3095, at ¶ 11. "Only when a definitive meaning proves elusive should rules for construing ambiguous language be employed. Otherwise, allegations of ambiguity become self-fulfilling." Id.
 {¶ 52} Here, we cannot conclude that a definitive meaning proves elusive under the grant agreements. Taken in isolation, the use of the word "shall" in reference to Beaumont Environmental Systems in paragraph 14 of the grant agreements arguably may suggest that the parties intended to confer intended third-party beneficiary status upon Beaumont Environmental Systems. However, in viewing the grant agreements in their entirety, it is evident by paragraph 11 that the parties unambiguously intended that nothing expressed or implied in the agreements was intended, or was to be construed to confer upon any other person or entities, except for the parties or permitted assigns and successors, any rights or remedies. Thus, we conclude that Beaumont Environmental Systems was an incidental beneficiary under the grant agreements between MCO and OCDO, rather than an intended third-party beneficiary to whom MCO and OCDO assumed a duty under the grant agreements.
 {¶ 53} Accordingly, plaintiff's contention that its predecessor-in-interest, Beaumont Environmental Systems, was an intended third-party beneficiary under the grant agreements between MCO and OCDO is not well-taken. Plaintiff's second assignment of error is therefore overruled.
 {¶ 54} Finally, we cannot conclude that the trial court erred when it dismissed plaintiff's claims that MCO and OCDO breached the RAP and LoTOxNOx grant agreements and that MCO and OCDO breached covenants of good faith and fair dealing under the RAP and LoTOxNOx grant agreements
 {¶ 55} "[C]ontractual privity goes to the very heart of actionable breach and is a fundamental principle of contract law." Mark-It Place Foods, Inc. v. New Plan Excel Realty Trust,156 Ohio App.3d 65, 2004-Ohio-411, at ¶ 22; see, also id., at ¶ 22, fn. 9. "[I]n Ohio, it has been long settled that, `[a] party cannot, for his own benefit, insist upon the performance of a contract between others and to which he is not a party or privy; no claim relief against either of the parties to such a contract[.]'" Gueldenzoph v. Bridal Aisle Boutique (June 14, 1991), Lucas App. No. L-90-301, quoting Vougt v. Columbus,Hocking Valley Athens R.R. Co. (1898), 58 Ohio St. 123, paragraph two of the syllabus; see, also, First Bank of Mariettav. Olnhausen (Sept. 1, 2000), Washington App. No. 99CA22, at fn. 3, quoting Black's Law Dictionary (7 Ed. 1999), 1217 (defining "privity").
 {¶ 56} Here, having found that plaintiff was neither a signatory nor an intended third-party beneficiary under the grant agreements between MCO and OCDO, plaintiff's claims that MCO and OCDO breached the RAP and LoTOxNOx grant agreements and that MCO and OCDO breached covenants of good faith and fair dealing under the RAP and LoTOxNOx grant agreements, as a matter of law, fail.
 {¶ 57} Accordingly, plaintiff's first assignment of error is sustained, and plaintiff's second assignment of error is overruled. We therefore affirm in part and reverse in part the judgment of the Court of Claims of Ohio and remand this cause to that court for further proceedings in accordance with law and consistent with this opinion.
Judgment affirmed in part; reversed in part; cause remanded.
French and Travis, JJ., concur.
[1] Effective June 8, 2005, the Medical College of Ohio has been renamed the Medical University of Ohio at Toledo. See, generally, Evid.R. 201(B) and (C) (authorizing a court to take discretionary judicial notice of a fact that is not subject to reasonable dispute in that it is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned").