[Cite as *Hoffman v. Atlas Title Solutions, Ltd.*, 2023-Ohio-1706.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## UNION COUNTY

CONOR HOFFMAN,

     PLAINTIFF-APPELLANT,          CASE NO. 14-23-04

     v.

ATLAS TITLE SOLUTIONS, LTD,          O P I N I O N

     DEFENDANT-APPELLEE.

Appeal from Union County Common Pleas Court
Trial Court No. 2021-CV-0123

Judgment Reversed and Cause Remanded

Date of Decision: May 22, 2023

APPEARANCES:

    *Micaela M. Taylor* for Appellant

    *David L. Van Slyke* for Appellee

Case No. 14-23-04

**ZIMMERMAN, J.**

{¶1} Plaintiff-appellant, Conor Hoffman ("Hoffman"), appeals the November 17, 2022 judgment of the Union County Court of Common Pleas granting summary judgment in favor of defendant-appellee, Atlas Title Solutions, Ltd. ("Atlas Title"), as to Hoffman's breach-of-contract and breach-of-fiduciary-duty claims. For the reasons that follow, we reverse.

{¶2} This case presents a novel issue requiring the analysis of who bears the responsibility for the escrow fraud that took place in this case. Even though we ultimately conclude that the trial court improperly granted summary judgment in favor of Atlas Title as to Hoffman's breach-of-contract and breach-of-fiduciary-duty claims because (at a minimum) genuine issues of material fact remain as to whether an implied agreement for escrow services exists, we acknowledge that more percolating issues exist in this case. Importantly, we agree that triable issues remain as to whether (at the very least) Atlas Title implemented "proper" security measures to prevent Hoffman's personal information from being "phished" to precipitate the "spoofed" email or whether Hoffman should have recognized that the email was "spoofed."

{¶3} By way of background, this case stems from an April 22, 2021 real-estate closing during which Hoffman and Macie McMahon ("McMahon"),

Hoffman's fiancé, were defrauded of $289,722.19.[1] Hoffman contracted to purchase real-estate located at 322 Moss Court in Marysville, Ohio for $290,000.00 (cash) from Richard D. and Stephanie Little (the "Littles"). *See Rassi v. Buckeye Title Agency, Inc.*, 2d Dist. Montgomery No. 28985, 2021-Ohio-2129, ¶ 3 (explaining that "[t]his was a cash transaction, meaning, of course, that a bank was not involved"). For purposes of the transaction, Tamie Gordon ("Gordon"), a real-estate agent with Big Hill Realty Corporation, dba Better Homes and Gardens Big Hill ("Better Homes and Gardens") represented the Littles, while Jasmine McKenzie ("McKenzie"), a real-estate agent with Consultants Realty, LLC, dba Keller Williams Consultants Realty ("Keller Williams") represented Hoffman and McMahon.

{¶4} Nevertheless, Hoffman and the Littles engaged Atlas Title as the escrow agent and title agent for the sale after Gordon suggested its services.[2] As a result, Melonie McCaulley ("McCaulley") of Atlas Title served as the escrow agent and closing official for the transaction. Importantly, Hoffman and the Littles shared the cost of Atlas Title's services. Of those services, Hoffman bore the recording fee, the wire fee, and cost of title insurance, while Hoffman and the Littles shared the cost of the title binder and Atlas Title's settlement fee.

---

[1] The purchase contract and deed are in only Hoffman's name.
[2] At the time that Gordon recommended hiring Atlas Title as the escrow officer and title agent for the sale of the property, Gordon "had a marketing role with Atlas" and Atlas Title employed Gordon's fiancé. (McCaulley Depo. at 68).

**{¶5}** On April 13, 2021, a representative of Keller Williams informed Hoffman and McMahon that they needed to wire $289,722.19 to Atlas Title at least one day prior to the April 22, 2021 closing. McCaulley and Alice Elliot ("Elliot"), McCaulley's assistant, were copied on that email. The email further instructed Hoffman and McMahon that "[t]he Title company will send you wire instructions in a <u>secure email</u>. Upon receiving your wiring instructions, *please contact or have your bank contact the title company above, to confirm wiring instructions*." (Italics sic.); (Underline added.) (Doc. No. 51, Ex. K1). Similarly, the day before, McKenzie instructed Hoffman by text message that "[t]he title company will provide wiring instructions. Be sure to call them to confirm the amount to wire and instructions BEFORE you wire any money." (Emphasis sic.) (Doc. No. 51, Ex. I).

**{¶6}** Further, Joanie Lowry ("Lowry"), a client care coordinator with Keller Williams, sent a Google Calendar invitation to Hoffman and McMahon as well as McKenzie, McCaulley, and Elliott indicating the details for closing. Critically, the invitation reflects McCaulley's and Elliott's email addresses as melonie@atlastitlesoulutions.com and alice@atlastitlesoulutions.com, respectively.

**{¶7}** On April 20, 2021, Hoffman and McMahon received an email—which appeared to be legitimate—from someone claiming to be Elliot (from email address titleclosingagent101@gmail.com). *See Children's Apparel Network Ltd. v. Twin City Fire Ins. Co.*, S.D.N.Y. No. 18 Civ. 10322, 2019 WL 3162199, *1 (June 26,

2019), fn. 3 (noting that "'an email spoofing scheme'" is "defined as 'a fraudulent or malicious practice in which a communication is sent from an unknown source disguised as a source known to the receiver'"); *Silverstein v. Keynetics Inc.*, 192 F.Supp.3d 1045, 1051 (N.D.Ca.2016) (defining "email spoofing'" as a situation "by which 'the header of an e-mail appears to have originated from someone or somewhere other than the actual source.'"), quoting Dep't of Justice News Release, *FBI Says Web "Spoofing" Scams Are A Growing Problem*, 2003 WL 21692056, (July 21, 2003); *Premiere Digital Access, Inc. v. Cent. Tel. Co.*, 360 F.Supp.2d 1161, 1163 (D.Nev.2005) (defining "'spoofing'" as "the practice of forging e-mail header information to hide the source of the e-mail").

{¶8} The above email instructed Hoffman and McMahon to wire $289,772.19 to an account purporting to belong to Atlas Title. Importantly, the email was sent to Hoffman and McMahon during the timeframe that they were expecting to receive such email and the email "contained the actual time and date of the closing * * * , [Hoffman's and McMahon's] names, the purchase price, the identity of the individual at Atlas [Title] involved in the closing, and a replica of [Atlas Title's] actual wire transfer form, complete with the Atlas [Title] logo." (Doc. No. 2). Believing the authenticity of the email, Hoffman completed the wire transfer that same day. Indeed, Hoffman, using the contact number provided on the e-mail that he thought was from Atlas Title, contacted the person posing as a

representative of Atlas Title to confirm the transaction. However, the email was not from Elliot or anyone at Atlas Title, and, unbeknownst to Hoffman and McMahon, the email instructed them to wire the funds to an account belonging to an unidentified person. Specifically, Hoffman and McMahon were instructed to wire the funds to Frances Real Estate, LLC at an account held by Wells Fargo Bank in Cincinnati, Ohio.

{¶9} Significantly, prior to the transaction at issue in this case, Atlas Title had been notified of a prior hacking incident, which compromised its email system in February 2021, as well as prior email-spoofing efforts, including incidents involving the same fraudster at issue in this case. Incredibly, the *same* fraudster attempted to spoof the Littles on April 20, 2021—the same day that Hoffman sent the wire transfer to the fraudster—in conjunction with the closing on the house they were purchasing.

{¶10} According to McCaulley, Atlas Title alerted Mark Milliron ("Milliron") of Kloud9, Atlas Title's internet-technology security provider, of the hacking and spoofing incidents. According to McCaulley, Milliron reported that Atlas Title's system was hacked and that the hacker was in an Atlas Title's employee's email "for about an hour." (McCaulley Depo. at 37). However, McCaulley testified that Milliron reported that the hacker did not obtain any

information from Atlas Title. Notwithstanding these incidents, Atlas Title did not inform Hoffman, McMahon, or McKenzie of the occurrences.

{¶11} Nonetheless, Atlas Title emailed "the settlement statement and real wire instructions * * * using an *unencrypted* email" on April 21, 2021 to Hoffman and McMahon. (Emphasis added.) (*Id.*). However, that email was intercepted by Hoffman's email-spam filter.

{¶12} Unaware of the fraud, Hoffman and McMahon "closed on the property on April 22, 2021," and "did not become aware of the legitimate e-mail and that Atlas [Title] had not received the Purchase Funds until April 23, 2021." (*Id.*). Significantly, Atlas Title did not "alert [Hoffman or McMahon] that it had not received the wire transfer" "prior to April 23, 2021." (*Id.*). Consequently, Hoffman and McMahon were unable to recover "the funds through banking channels * * * ." (*Id.*). Nevertheless, because Hoffman and McMahon secured a loan from Hoffman's grandmother, closing was rescheduled and the purchase was completed on April 27, 2021.

{¶13} On July 28, 2021, Hoffman and McMahon filed a complaint in the trial court against Atlas Title, Keller Williams, Better Homes and Gardens, McKenzie, and Gordon alleging claims for negligence, breach of fiduciary duty, and (as an alternative to their negligence claim) breach of contract (as to Atlas Title, Keller Williams, and McKenzie).

{¶14} After being granted leave, Better Homes and Gardens and Gordon filed an answer on September 21, 2021. Likewise, Atlas Title filed its answer along with cross-claims against Keller Williams, Better Homes and Gardens, McKenzie, and Gordon on September 28, 2021. Also that day, Keller Williams and McKenzie filed an answer along with cross-claims against Atlas Title, Better Homes and Gardens, and Gordon. Atlas Title as well as Keller Williams and McKenzie, respectively, alleged cross-claims for implied indemnity and implied contribution.

{¶15} Keller Williams and McKenzie field an answer to Atlas Title's cross-claims on November 1, 2021 and Better Homes and Gardens and Gordon filed an answer to Atlas Title's cross-claims on November 2, 2021.

{¶16} On August 31, 2022, Atlas Title filed a motion for summary judgment, arguing that it "did not owe a legally recognized duty to protect [Hoffman] from third-parties"; that Atlas Title "never agreed to act in a fiduciary capacity for the benefit of" Hoffman or McMahon; Hoffman and McMahon are "barred by the economic loss rule"; and that there was no contract. (Doc. No. 51).

{¶17} After being granted an extension of time, Hoffman and McMahon filed their memorandum in opposition to Atlas Title's motion for summary judgment on October 18, 2022. As evidence in support of their memorandum in opposition to Atlas Title's motion for summary judgment, Hoffman and McMahon submitted the affidavit of Carole Bullion ("Bullion"), an account executive with

Liberty Title Agency in Brighton, Michigan. In her affidavit, Bullion averred that, based on her "experience and review and analysis of the materials provided" in this case, "Atlas Title Solutions owes obligations to [Hoffman and McMahon] by virtue of its serving as an escrow agent for the transaction for the purchase of the home" at issue in this case. (Doc. No. 64, Ex. B).

{¶18} To illustrate, Bullion highlighted that "[t]he title insurance/closing industry is comprised of two parts—title insurance and escrow closing services" and that "[a]n agency can conduct one or both of these functions during a transaction." (*Id.*). "The title insurance part of a transaction includes the examination of a property's title, preparation of a title commitment, and eventual issuance of a title policy once all requirements have been met," while "[t]he escrow closing services portion of a transaction involves the clearance of all requirements of a title commitment and the preparation of closing documents (including generating settlement statements, ensuring the receipt of any funds needed for the transaction, recording documents, and disbursing funds)." (*Id.*).

{¶19} According to Bullion, Atlas Title "was serving as an escrow agent even without a written agreement" when it agreed to provide "escrow closing services" in this case. (*Id.*). Bullion averred that Atlas Title accepted its role as an escrow agent in this case based on (1) "[t]he Master Settlement Statement" reflecting "that Ms. McCaulley was the 'Escrow Officer/Closer'"; (2) the fees paid

by Hoffman and McMahon to Atlas Title, including "wire, recording, recording service, and settlement fees"; and (3) because Atlas Title "performed tasks consistent with those of an escrow agent," including closing the transaction. (*Id.*).

{¶20} Regarding escrow agreements, Bullion instructed that an "escrow agreement to act as a settlement or escrow agent for the buyers and/or sellers" is typically not required. (*Id.*). Such agreements are required only "when a settlement/escrow agent needs direction on how to disburse funds held when there are potential liens against the property or if there is a disagreement as to whom the funds should be paid." (*Id.*).

{¶21} After reviewing the evidence in the record, Bullion averred that "Atlas had an obligation to put in place procedures to protect consumers like [Hoffman and McMahon] from the spoofing incident that occurred, as well as warn [Hoffman and McMahon] of known spoofing incidents." (*Id.*). Specifically, Bullion identified that Atlas Title failed [Hoffman and McMahon]

> by (1) not having procedures in place for the safe transmittal of wiring instruction [sic] and adequately informing customers about such procedures; (2) not having procedures in place to warn customers of the risk of spoofing incidents and how to effectively avoid them; and (3) not warning [Hoffman and McMahon] that Atlas had been the target of the same spoofer multiple times prior to the transaction involving [Hoffman and McMahon].

(*Id.*).

**{¶22}** Further, Bullion averred that "Atlas Title Solutions did not have an adequate compliance program to safeguard their customers' information." (*Id.*). Importantly, Bullion averred that Atlas Title "did not follow its own policy or the [American Land Title Association ("ALTA")] Best Practices," which "fell well below the industry standards of practice and failed their obligations to [Hoffman and McMahon]" in this case. (*Id.*). Importantly, Bullion identified that

> this incident could not have happened had Atlas (1) had adequate procedures for wire transfers in place; (2) had adequate procedures for communicating wire procedures to customers; (3) adequately warned customers about spoofs and how to avoid them; (4) specifically warned [Hoffman and McMahon] that Atlas had been a target by the same fraudster * * * ; and (5) promptly advised [Hoffman and McMahon] that the wire had not been received.

(*Id.*).

**{¶23}** Atlas Title filed its reply to Hoffman and McMahon's memorandum in opposition to its motion for summary judgment on November 10, 2022.

**{¶24}** On September 9, 2022, Atlas Title dismissed its cross-claims against Keller Williams and McKenzie without prejudice under Civ.R. 41(A)(1)(a). On October 25, 2022, McMahon dismissed her claims against Atlas Title, Keller Williams, Better Homes and Gardens, McKenzie, and Gordon without prejudice under Civ.R. 41(A)(1). On October 27, 2022, Hoffman dismissed his claims against Keller Williams and McKenzie with prejudice. On November 14, 2022, Hoffman dismissed his claims against Better Homes and Gardens and Gordon with prejudice.

{¶25} On November 17, 2022, the trial court granted summary judgment in favor of Atlas Title as to Hoffman's breach-of-fiduciary-duty and breach-of-contract claims after concluding that "there exists no fiduciary duty or no privity of contract." (Doc. No. 78).

{¶26} On December 16, 2022, Hoffman filed a motion requesting the trial court to certify its November 17, 2022 decision under Civ.R. 54(B), which the trial court granted on December 19, 2022. Consequently, the trial court dismissed Hoffman's negligence and gross-negligence claims with prejudice (based on Hoffman's request) and certified that there is no just reason for delay.

{¶27} Hoffman filed his notice of appeal on December 19, 2022. He raises two assignments of error for our review, which we will address together.

**Assignment of Error No. I**

**The Trial Court erred in dismissing Conor Hoffman's breach of contract claim against Atlas Title Solutions, Ltd.**

**Assignment of Error No. II**

**The Trial Court erred in dismissing Conor Hoffman's breach of fiduciary duty claim against Atlas Title Solutions, Ltd.**

{¶28} In his assignments of error, Hoffman argues that the trial court erred by granting summary judgment in favor of Atlas Title and dismissing his breach-of-contract and breach-of-fiduciary-duty claims. In particular, Hoffman contends, under his first assignment of error, that the trial court erred by concluding that a

written contract is necessary for Atlas Title to be in contractual privity with him. Consequently, he argues genuine issues of material fact remain as to whether an implied-in-fact contract for escrow services existed. Under his second assignment of error, Hoffman specifically argues that genuine issues of material fact remain as to whether Atlas Title breached its fiduciary duty.

*Standard of Review*

**{¶29}** We review a decision to grant summary judgment de novo. *Doe v. Shaffer*, 90 Ohio St.3d 388, 390 (2000). "De novo review is independent and without deference to the trial court's determination." *ISHA, Inc. v. Risser*, 3d Dist. Allen No. 1-12-47, 2013-Ohio-2149, ¶ 25, citing *Costner Consulting Co. v. U.S. Bancorp*, 195 Ohio App.3d 477, 2011-Ohio-3822, ¶ 10 (10th Dist.). Summary judgment is proper where there is no genuine issue of material fact, the moving party is entitled to judgment as a matter of law, and reasonable minds can reach but one conclusion when viewing the evidence in favor of the non-moving party, and the conclusion is adverse to the non-moving party. Civ.R. 56(C); *State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn.*, 69 Ohio St.3d 217, 219 (1994).

**{¶30}** "The party moving for summary judgment has the initial burden of producing some evidence which demonstrates the lack of a genuine issue of material fact." *Carnes v. Siferd*, 3d Dist. Allen No. 1-10-88, 2011-Ohio-4467, ¶ 13, citing *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996). "In doing so, the moving party is

not required to produce any affirmative evidence, but must identify those portions of the record which affirmatively support his argument." *Id.*, citing *Dresher* at 292. "The nonmoving party must then rebut with specific facts showing the existence of a genuine triable issue; he may not rest on the mere allegations or denials of his pleadings." *Id.*, citing *Dresher* at 292 and Civ.R. 56(E).

*Analysis*

{¶31} In this case, the trial court granted summary judgment on November 17, 2022 in favor of Atlas Title as to Hoffman's breach-of-contract and breach-of-fiduciary-duty claims. Specifically, the trial court concluded that Atlas Title did not breach any contract with Hoffman. Reaching this conclusion, the trial court reasoned that there is no genuine issue of material fact that there is no contractual privity between Hoffman and Atlas Title. Likewise, the trial court concluded that Atlas Title did not breach a fiduciary duty to Hoffman after concluding there is no genuine issue of material fact that Atlas Title did not owe a fiduciary duty to Hoffman since there is "no written contract or documentation that supports the assertion that Atlas Title was the agreed upon escrow agent." (Doc. No. 78).

{¶32} Generally, Hoffman contends that Atlas Title breached its escrow agreement and its corresponding fiduciary duty as a result of the escrow fraud because Atlas Title agreed to facilitate the deal at issue in this case by conducting a safe and compliant transaction. Atlas Title disputes Hoffman's argument and

-14-

contends that "[t]he trial court correctly found that there was no contract by which Atlas agreed to insure or otherwise guarantee that [Hoffman] would successfully fund his purchase of the Real Estate." (Appellee's Brief at 18). Specifically, Atlas Title argues that there is no genuine issue of material fact that no implied agreement existed between it and Hoffman because Hoffman did not "relay his expectations to Atlas and receive confirmation from Atlas that Atlas agreed to ensure that [he] would successfully fund the purchase * * * ." (*Id.* at 19). Based on our review of the record, we conclude that several triable issues remain in this case.

{¶33} We will begin by addressing Hoffman's argument that the trial court erred by granting summary judgment in favor of Atlas Title as to his breach-of-contract claim. For the reasons that follow, we conclude that genuine issues of material fact remain as to whether Atlas Title breached its escrow agreement with Hoffman. "A cause of action for breach of contract requires the claimant to establish the existence of a contract, the failure without legal excuse of the other party to perform when performance is due, and damages or loss resulting from the breach." *Lucarell v. Nationwide Mut. Ins. Co.*, 152 Ohio St.3d 453, 2018-Ohio-15, ¶ 41.

{¶34} In this case, Hoffman argues that the trial court erred by concluding that a written agreement is a requirement for him to maintain his breach-of-contract claim. "'There are three classes of simple contracts; express, implied in fact, and implied in law.'" *Waffen v. Summers*, 6th Dist. Ottawa No. OT-08-034, 2009-Ohio-

2940, ¶ 31, quoting *Hummel v. Hummel*, 133 Ohio St. 520, 525 (1938). "'The essential elements of a contract include an offer, acceptance, contractual capacity, consideration (the bargained for legal benefit and/or detriment), a manifestation of mutual assent, and legality of object and consideration.'" *Rassi*, 2021-Ohio-2129, at ¶ 8, quoting *Thies v. Wheelock*, 2d Dist. Miami No. 2017-CA-8, 2017-Ohio-8605, ¶ 16.

{¶35} "'In express contracts the assent to its terms is actually expressed in offer and acceptance.'" *Waffen* at ¶ 31, quoting *Hummel* at 525. However, "'[i]n contracts implied in fact the meeting of the minds, manifested in express contracts by offer and acceptance, is shown by the surrounding circumstances which make it inferable that the contract exists as a matter of tacit understanding.'" *Id.*, quoting *Hummel* at 525. *See also Union Savs. Bank v. Lawyers Title Ins. Corp.*, 191 Ohio App.3d 540, 2010-Ohio-6396, ¶ 21 (10th Dist.) ("'While both express and implied contracts require the showing of an agreement based on a meeting of the minds and mutual assent, the manner in which these requirements are proven varies depending upon the nature of the contract.'"), quoting *Reali, Giampetro & Scott v. Soc. Natl. Bank*, 133 Ohio App.3d 844, 849 (7th Dist.1999).

{¶36} "An escrow agent 'is an agent of both parties, as well as a paid trustee with respect to the purchase money funds placed in his hands.'" *Hurst v. Ent. Title Agency, Inc.*, 157 Ohio App.3d 133, 2004-Ohio-2307, ¶ 40 (11th Dist.), quoting

*Pippin v. Kern-Ward Bldg. Co.*, 8 Ohio App.3d 196, 198 (8th Dist.1982). "The escrow agent owes the parties a duty 'to carry out the terms of the agreement as intended by the parties.'" *Id.*, quoting *Pippin* at 198. "'"The main function of an escrow agent is to hold documents and funds until the conditions of the purchase agreement are met whereupon the escrow agent releases the documents and funds."'" *Union Savs. Bank* at ¶ 22, quoting *Waffen* at ¶ 32, quoting *Saad v. Rodriguez*, 30 Ohio App.3d 156, 158 (8th Dist.1986).

**{¶37}** "Ohio courts have held that escrow agreements do not have to be in writing." *Id. See also Johnson v. U.S. Title Agency, Inc.*, 8th Dist. Cuyahoga No. 103665, 2017-Ohio-2852, ¶ 47 (addressing "that an escrow agreement need not be express or formal, and may be deemed to exist where there are only closing instructions"). Indeed, to constitute an "implied escrow agreement[]," "'[n]o precise form of words is necessary to constitute an escrow'" agreement and "'[t]he term "escrow" need not be used.'" *Union Savs. Bank* at ¶ 22, quoting *Waffen* at ¶ 30. Rather, "'whether an escrow exists in any case depends not so much upon the terms the parties may use as upon the intent with which the deed or paper is deposited in the hands of a third party.'" *Id.*, quoting *Waffen* at ¶ 30.

**{¶38}** We conclude that (at a minimum) a genuine issue of material fact exists as to whether Hoffman and Atlas Title entered into an escrow agreement. *Accord Rassi*, 2021-Ohio-2129, at ¶ 8; *Waffen* at ¶ 36. *See also Union Savs. Bank*

at ¶ 23 (concluding that "the court erred in granting summary judgment on appellant's breach-of-contract claim" "[b]ecause the trial court did not consider whether an implied-in-fact contract existed between the parties and erroneously concluded that appellant had paid no consideration"). Indeed, based on the circumstances surrounding the transaction at issue in this case, a triable issue remains as to whether an escrow agreement exists as a matter of tacit understanding.

{¶39} Here, the record reveals that Hoffman and the Littles requested that Atlas Title serve as the escrow agent *and* title agent for their real-estate transaction. *Compare Lawyers Title Ins. Corp. v. MHD Corp.*, 6th Dist. Erie No. E-10-007, 2010-Ohio-5174, ¶ 3 (noting that the title company "acted as escrow agent and title agent") *with Kenney v. Henry Fischer Builder, Inc.*, 129 Ohio App.3d 27, 31 (1st Dist.1998) (noting the title company served only as the title abstractor). Further, the record reveals that Atlas Title agreed to perform as the escrow agent and title agent and that Hoffman and the Littles promised to pay Atlas Title for those services. (*See, e.g.*, Doc. No. 51, Ex. G); (Doc. No. 34). *Compare Waffen* at ¶ 37 (concluding that "the contract exists as a matter of mutual tacit understanding" even though "not expressly articulated" because all the elements of a contract—offer, acceptance, contractual capacity, consideration, [and] manifestation of mutual assent—exist"). Critically, the record reveals that Hoffman promised to pay the recording fee, the wire fee, and cost of title insurance, while Hoffman and the Littles

promised to share the cost of the title binder and Atlas Title's settlement fee. *See Rassi* at ¶ 8 (analyzing that "the Rassis requested that Buckeye perform the 'necessary title work and closing'" and that "Buckeye, through [its agent], agreed to and did perform the requested services, and the Rassis paid Buckeye for the completed services").

**{¶40}** Moreover, Hoffman provided evidence in opposition to Atlas Title's motion for summary judgment that an "escrow agreement to act as a settlement or escrow agent for the buyers and/or sellers" is typically not required. (Doc. No. 64, Ex. B). According to Bullion's affidavit (supplied by Hoffman), such agreements are required only "when a settlement/escrow agent needs direction on how to disburse funds held when there are potential liens against the property or if there is a disagreement as to whom the funds should be paid." (*Id.*).

**{¶41}** Likewise, Buillion averred that Atlas Title "was serving as an escrow agent even without a written agreement" when it agreed to provided "escrow closing services" in this case. (*Id.*). Bullion averred that Atlas Title accepted its role as an escrow agent in this case based on (1) "[t]he Master Settlement Statement" reflecting "that Ms. McCaulley was the 'Escrow Officer/Closer"; (2) the fees Hoffman promised to pay to Atlas Title, including "wire, recording, recording service, and settlement fees"; and (3) because Atlas Title "performed tasks consistent with those of an escrow agent," including closing the transaction. (*Id.*).

**{¶42}** Nevertheless, the trial court concluded that the parties did not have contractual privity. """"A contract is binding only upon parties to a contract and those in privity with them."""" *Gilchrist v. Saxon Mtge. Servs.*, 10th Dist. Franklin No. 12AP-556, 2013-Ohio-949, ¶ 23, quoting *DVCC, Inc. v. Med. College of Ohio*, 10th Dist. Franklin No. 05AP-237, 2006-Ohio-945, ¶ 19, quoting *Samadder v. DMF of Ohio, Inc.*, 154 Ohio App.3d 770, 2003-Ohio-5340, ¶ 25 (10th Dist.). "Privity is defined as '[t]he connection or relationship between two parties, each having a legally recognized interest in the same subject matter.'" *Bohan v. Dennis C. Jackson Co., L.P.A.*, 188 Ohio App.3d 446, 2010-Ohio-3422, ¶ 12 (8th Dist.), quoting *Shoemaker v. Gindlesberger*, 118 Ohio St.3d 226, 2008-Ohio-2012, ¶ 10. Generally, "Ohio courts have refused to find privity of contract between a purchaser and a title company when the title examination is performed as part of a contract between the *lender* and the title company." (Emphasis added.) *Rassi*, 2021-Ohio-2129, at ¶ 9.

**{¶43}** Here, the trial court erroneously concluded that Hoffman and Atlas Title lacked contractual privity. Since the transaction at issue in this case was a cash transaction, Hoffman and the Littles contracted directly with Atlas Title to serve as the escrow agent and title agent for the transaction. *Accord id.* (concluding that "there was privity of contract between" the Rassis and Buckeye because "the Rassis contracted directly with Buckeye to perform the title examination and the closing").

Thus, genuine issues of material fact remain as to whether an implied contract for escrow services exists in this case. Consequently, we conclude that the trial court erred by granting summary judgment in favor of Atlas Title as to Hoffman's breach-of-contract claim.

{¶44} Turning to Hoffman's breach-of-fiduciary-duty claim, Hoffman argues that the trial court erred by granting summary judgment in favor of Atlas Title as to his breach-of-fiduciary-duty claim because (at a minimum) genuine issues of material fact remain as to whether an implied agreement for escrow services exists. Importantly, Hoffman argues that, "[i]f Atlas [Title] was an escrow agent, then Ohio law provides as a matter of common law [that] Atlas [Title] owes fiduciary obligations to Mr. Hoffman." (Appellant's Brief at 24). Atlas Title contests Hoffman's argument by remaining steadfast that the parties did not form any such agreement. Alternatively, Atlas Title argues that "[i]f there is a contract, * * * the economic lass rule precludes recovery for economic damages for any alleged breach of fiduciary duty." (Appellee's Brief at 25). Based on our review of the record, we conclude that genuine issues of material fact remain as to whether Atlas Title breached a fiduciary duty to Hoffman.

{¶45} "'The elements for a breach of fiduciary duty claim are: "(1) the existence of a duty arising from a fiduciary relationship; (2) a failure to observe the duty; and (3) an injury resulting proximately therefrom."'" *Camp St. Mary's Assn.*

*of W. Ohio Conference of the United Methodist Church, Inc.*, 176 Ohio App.3d 54, 2008-Ohio-1490, ¶ 19 (3d Dist.), quoting *Thomas v. Fletcher*, 3d Dist. Shelby No. 17-05-31, 2006-Ohio-6685, ¶ 13, quoting *Werthmann v. DONet*, 2d Dist. Montgomery No. 20814, 2005-Ohio-3185, ¶ 42. "'A claim of breach of fiduciary duty is basically a claim for negligence that involves a higher standard of care.'" *Id.*, quoting *All Star Land Title Agency, Inc. v. Surewin Invest., Inc.*, 8th Dist. Cuyahoga No. 87569, 2006-Ohio-5729, ¶ 36. "Thus, the party asserting such a breach must establish the existence of a fiduciary duty, a breach of that duty, and an injury proximately resulting therefrom." *Hurst v. Ent. Title Agency, Inc.*, 157 Ohio App.3d 133, 2004-Ohio-2307, ¶ 39 (11th Dist.).

**{¶46}** "'A fiduciary has been defined as a person having a duty, created by his or her undertaking, to act primarily for the benefit of another in matters connected with such undertaking.'" *Id.*, quoting *All Star Land Title Agency* at ¶ 36. *See also Ciszewski v. Kolaczewski*, 9th Dist. Summit No. 26508, 2013-Ohio-1765, ¶ 10 ("A fiduciary relationship is 'a relationship "in which special confidence and trust is reposed in the integrity and fidelity of another and there is a resulting position of superiority or influence, acquired by virtue of this special trust."'"), quoting *Ed Schory & Sons, Inc. v. Soc. Natl. Bank*, 75 Ohio St.3d 433, 442 (1996), quoting *In re Termination of Employment of Pratt*, 40 Ohio St.2d 107, 115 (1974). "A fiduciary's role may be assumed by formal appointment or may arise from a more

informal confidential relationship, wherein 'one person comes to rely on and trust another in his important affairs and the relations there involved are not necessarily legal, but may be moral, social, domestic, or merely personal.'" *Foelsch v. Farson*, 5th Dist. Knox No. 19CA000036, 2020-Ohio-1259, ¶ 20, quoting *Craggett v. Adell Ins. Agency*, 92 Ohio App.3d 443, 451 (8th Dist.1993).

**{¶47}** Significantly, "'"[t]he very name 'escrow' gives it the earmarks of a trust."'" *Johnson*, 2017-Ohio-2852, at ¶ 45, quoting *Pippin*, 8 Ohio App.3d at 198, quoting *Squire v. Branciforti*, 131 Ohio St. 344, 355 (1936). "'Thus, the escrow agent is a *fiduciary* agent for both parties to a purchase agreement.'" (Emphasis added.) *Id.*, quoting *Saad*, 30 Ohio App.3d at 158. "The escrow agent owes the parties a duty 'to carry out the terms of the agreement as intended by the parties.'" *Hurst*, 157 Ohio App.3d 133, 2004-Ohio-2307, at ¶ 40, quoting *Pippin* at 198. However, "[a]n escrow agent, despite fiduciary status, will not be liable when he or she acts in accordance with the escrow agreement or instructions." *Waffen* at ¶ 34.

**{¶48}** Based on our resolution of Hoffman's first assignment of error, we conclude that (at a minimum) a genuine issue of material fact exists as to whether an implied contract for escrow services exists. *See Waffen*, 2009-Ohio-2940, at ¶ 36 (concluding that "sufficient documentation and evidence exists to show that an implied contract for escrow exists"). Importantly, the record reveals that Atlas Title agreed to act as the escrow agent and title agent in this case. *See id.* at ¶ 35

(analyzing that "Midland acted as escrow agent, and knew the terms by which it was bound to perform" because, in part, its agent "acknowledged that Midland provided escrow services for Waffen"). Indeed, the record reflects that Hoffman was a party to the transaction and that the parties promised to pay Atlas Title the fees for its escrow services as listed in the settlement agreement. *See id.* (concluding that the record reflected sufficient evidence that an implied contract for escrow services existed because, in part, the title agency "collected fees for escrow services as listed in the settlement worksheet"). Thus, because we conclude that a triable issue as to the existence of an escrow agreement exists, a triable issue as to the existence of a fiduciary duty remains and, consequently, whether Atlas Title breached that duty. *See Hurst* at ¶ 54 (O'Neill, J., dissenting) (concluding that "as an escrow agent, [the title company] owed a fiduciary duty to Hurst"); *Waffen* at ¶ 41 (establishing that "ordinarily, escrow agents are fiduciaries").

{¶49} Furthermore, contrary to Atlas Title's contention that the economic-loss rule precludes Hoffman's recovery for economic damages for any alleged breach of [a] fiduciary duty," Atlas Title's argument is misplaced. Generally, "[a]bsent tangible physical harm to persons or tangible things, there is generally no duty to exercise reasonable care to avoid economic losses to others." *Clemens v. Nelson Fin. Group, Inc.*, 10th Dist. Franklin No. 14AP-537, 2015-Ohio-1232, ¶ 34. "The economic-loss rule, therefore, 'generally prevents recovery in tort of damages

for purely economic loss.'" *Id.*, quoting *Corporex Dev. & Constr. Mgt., Inc. v. Shook, Inc.*, 106 Ohio St.3d 412, 2005-Ohio-5409, ¶ 6. "That is, 'a plaintiff who has suffered only economic loss due to another's negligence has not been injured in a manner which is legally cognizable or compensable.'" *Id.*, quoting *Corporex* at ¶ 6.

{¶50} "Although the economic-loss rule sweeps widely, it does *not* preclude all tort claims for economic damages." (Emphasis added.) *Id.* at ¶ 36. Importantly, "[a] plaintiff may pursue such a tort claim if it is 'based exclusively upon [a] discrete, preexisting duty in tort and not upon any terms of a contract or rights accompanying privity.'" *Id.*, quoting *Corporex* at ¶ 9. Exempt claims include, as relevant here, a breach-of-fiduciary-duty claim. *Id.*, citing *Morgan v. Mikhail*, 10th Dist. Franklin No. 08AP-87, 2008-Ohio-4598, ¶ 69. Therefore, Atlas Title's argument regarding the application of the economic-loss rule as to Hoffman's breach-of-fiduciary-duty claim fails.

{¶51} For these reasons, Hoffman's assignments of error are sustained.

{¶52} Having found error prejudicial to the appellant herein in the particulars assigned and argued, we reverse the judgment of the trial court and remand for further proceedings.

*Judgment Reversed and*
*Cause Remanded*

**MILLER, P.J. and WILLAMOWSKI, J., concur.**